(Slip Opinion)   OCTOBER TERM, 2017   1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CURRIER *v.* VIRGINIA

CERTIORARI TO THE SUPREME COURT OF VIRGINIA

No. 16–1348.   Argued February 20, 2018—Decided June 22, 2018

Petitioner Michael Currier was indicted for burglary, grand larceny,
and unlawful possession of a firearm by a convicted felon.  Because
the prosecution could introduce evidence of Mr. Currier's prior bur-
glary and larceny convictions to prove the felon-in-possession charge,
and worried that evidence might prejudice the jury's consideration of
the other charges, Mr. Currier and the government agreed to a sev-
erance and asked the court to try the burglary and larceny charges
first, followed by a second trial on the felon-in-possession charge.  At
the first trial, Mr. Currier was acquitted.  He then sought to stop the
second trial, arguing that it would amount to double jeopardy.  Alter-
natively, he asked the court to prohibit the state from relitigating at
the second trial any issue resolved in his favor at the first.  The trial
court denied his requests and allowed the second trial to proceed un-
fettered.  The jury convicted him on the felon-in-possession charge.
The Virginia Court of Appeals rejected his double jeopardy argu-
ments, and the Virginia Supreme Court summarily affirmed.

*Held*: The judgment is affirmed.

292 Va. 737, 798 S. E. 2d 164, affirmed.

   JUSTICE GORSUCH delivered the opinion of the Court with respect to
Parts I and II, concluding that, because Mr. Currier consented to a
severance, his trial and conviction on the felon-in-possession charge
did not violate the Double Jeopardy Clause, which provides that no
person may be tried more than once "for the same offence."  Mr. Cur-
rier argues that *Ashe* v. *Swenson,* 397 U. S. 436, requires a ruling for
him.  There, the Court held that the Double Jeopardy Clause barred
a defendant's prosecution for robbing a poker player because the de-
fendant's acquittal in a previous trial for robbing a different poker
player from the same game established that the defendant "was not
one of the robbers," *id.*, at 446.  *Ashe*'s suggestion that the relitigation

of an issue may amount to the impermissible relitigation of an offense represented a significant innovation in this Court's jurisprudence.  But whatever else may be said about *Ashe*, the Court has emphasized that its test is a demanding one.  *Ashe* forbids a second trial only if to secure a conviction the prosecution must prevail on an issue the jury necessarily resolved in the defendant's favor in the first trial.  A second trial is not precluded simply because it is unlikely—or even very unlikely—that the original jury acquitted without finding the fact in question.  To say that the second trial is tantamount to a trial of the same offense as the first and thus forbidden by the Double Jeopardy Clause, the Court must be able to say that it would have been irrational for the jury in the first trial to acquit without finding in the defendant's favor on a fact essential to a conviction in the second.

Bearing all that in mind, a critical difference emerges between this case and *Ashe*: Even assuming that Mr. Currier's second trial qualified as the retrial of the same offense under *Ashe*, he consented to the second trial.  In *Jeffers* v. *United States,* 432 U. S. 137, where the issue was a trial on a greater offense after acquittal on a lesser-included offense, the Court held that the Double Jeopardy Clause is not violated when the defendant "elects to have the . . . offenses tried separately and persuades the trial court to honor his election."  *Id.*, at 152.  If consent can overcome a traditional double jeopardy complaint about a second trial for a greater offense, it must also suffice to overcome a double jeopardy complaint under *Ashe*'s more innovative approach.  Holding otherwise would be inconsistent not only with *Jeffers* but with other cases too.  See, *e.g.*, *United States* v. *Dinitz,* 424 U. S. 600.  And cases Mr. Currier cites for support, *e.g.*, *Harris* v. *Washington*, 404 U. S. 55, merely applied *Ashe*'s test and concluded that a second trial was impermissible.  They do not address the question whether the Double Jeopardy Clause prevents a second trial when the defendant *consents* to it.

Mr. Currier contends that he had no choice but to seek two trials, because evidence of his prior convictions would have tainted the jury's consideration of the burglary and larceny charges.  This is not a case, however, where the defendant had to give up one constitutional right to secure another.  Instead, Mr. Currier faced a lawful choice between two courses of action that each bore potential costs and rationally attractive benefits.  Difficult strategic choices are "not the same as no choice," *United States* v. *Martinez-Salazar,* 528 U. S. 304, 315, and the Constitution "does not . . . forbid requiring" a litigant to make them, *McGautha* v. *California,* 402 U. S. 183, 213.  Pp. 3–8.

JUSTICE GORSUCH, joined by THE CHIEF JUSTICE, JUSTICE THOMAS, and JUSTICE ALITO, concluded in Part III that civil issue preclu-

Syllabus

sion principles cannot be imported into the criminal law through the Double Jeopardy Clause to prevent parties from retrying any issue or introducing any evidence about a previously tried issue. Mr. Currier argues that, even if he consented to a second trial, that consent did not extend to the relitigation of any issues the first jury resolved in his favor. Even assuming for argument's sake that Mr. Currier's consent to holding a second trial didn't more broadly imply consent to the manner it was conducted, his argument must be rejected on a narrower ground as refuted by the text and history of the Double Jeopardy Clause and by this Court's contemporary double jeopardy cases, *e.g.*, *Blockburger* v. *United States,* 284 U. S. 299; *Dowling* v. *United States*, 493 U. S. 342. Nor is it even clear that civil preclusion principles would help defendants like Mr. Currier. See, *e.g., Bravo-Fernandez* v. *United States*, 580 U. S. ___, ___. Grafting civil preclusion principles onto the criminal law could also invite ironies—*e.g.*, making severances more costly might make them less freely available. Pp. 8–16.

JUSTICE KENNEDY concluded that, because Parts I and II of the Court's opinion resolve this case in a full and proper way, the extent of the Double Jeopardy Clause protections discussed and defined in *Ashe* need not be reexamined here. Pp. 1–2.

GORSUCH, J., announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I and II, in which ROBERTS, C. J., and KENNEDY, THOMAS, and ALITO, JJ., joined, and an opinion with respect to Part III, in which ROBERTS, C. J., and THOMAS and ALITO, JJ., joined. KENNEDY, J., filed an opinion concurring in part. GINSBURG, J., filed a dissenting opinion, in which BREYER, SOTOMAYOR, and KAGAN, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 16–1348

MICHAEL NELSON CURRIER, PETITIONER *v.* VIRGINIA

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF VIRGINIA

[June 22, 2018]

JUSTICE GORSUCH announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I and II, and an opinion with respect to Part III, in which THE CHIEF JUSTICE, JUSTICE THOMAS, and JUSTICE ALITO join.

About to face trial, Michael Currier worried the prosecution would introduce prejudicial but probative evidence against him on one count that could infect the jury's deliberations on others. To address the problem, he agreed to sever the charges and hold two trials instead of one. But after the first trial finished, Mr. Currier turned around and argued that proceeding with the second would violate his right against double jeopardy. All of which raises the question: can a defendant who agrees to have the charges against him considered in two trials later successfully argue that the second trial offends the Fifth Amendment's Double Jeopardy Clause?

I

This case began when police dredged up a safe full of guns from a Virginia river. Paul Garrison, the safe's owner, had reported it stolen from his home. Before the

theft, Mr. Garrison said, it contained not just the guns but also $71,000 in cash. Now, most of the money was missing. As the investigation unfolded, the police eventually found their way to Mr. Garrison's nephew. Once confronted, the nephew quickly confessed. Along the way, he pointed to Michael Currier as his accomplice. A neighbor also reported that she saw Mr. Currier leave the Garrison home around the time of the crime. On the strength of this evidence, a grand jury indicted Mr. Currier for burglary, grand larceny, and unlawful possession of a firearm by a convicted felon. The last charge followed in light of Mr. Currier's previous convictions for (as it happens) burglary and larceny.

Because the prosecution could introduce evidence of his prior convictions to prove the felon-in-possession charge, and worried that the evidence might prejudice the jury's consideration of the other charges, Mr. Currier and the government agreed to a severance. They asked the court to try the burglary and larceny charges first. Then, they said, the felon-in-possession charge could follow in a second trial. Some jurisdictions routinely refuse requests like this. Instead, they seek to address the risk of prejudice with an instruction directing the jury to consider the defendant's prior convictions only when assessing the felon-in-possession charge. See Brief for Indiana et al. as *Amici Curiae* 10. Other jurisdictions allow parties to stipulate to the defendant's past convictions so the particulars of those crimes don't reach the jury's ears. *Ibid.* Others take a more protective approach yet and view severance requests with favor. *Id.,* at 11–12; see, *e.g., Hackney* v. *Commonwealth,* 28 Va. App. 288, 294–296, 504 S. E. 2d 385, 389 (1998) (en banc). Because Virginia falls into this last group, the trial court granted the parties' joint request in this case.

The promised two trials followed. At the first, the prosecution produced the nephew and the neighbor who testi-

fied to Mr. Currier's involvement in the burglary and larceny. But Mr. Currier argued that the nephew lied and the neighbor was unreliable and, in the end, the jury acquitted. Then, before the second trial on the firearm charge could follow, Mr. Currier sought to stop it. Now, he argued, holding a second trial would amount to double jeopardy. Alternatively and at the least, he asked the court to forbid the government from relitigating in the second trial any issue resolved in his favor at the first. So, for example, he said the court should exclude from the new proceeding any evidence about the burglary and larceny. The court replied that it could find nothing in the Double Jeopardy Clause requiring either result so it allowed the second trial to proceed unfettered. In the end, the jury convicted Mr. Currier on the felon-in-possession charge.

Before the Virginia Court of Appeals, Mr. Currier repeated his double jeopardy arguments without success. The court held that the "concern that lies at the core" of the Double Jeopardy Clause—namely, "the avoidance of prosecutorial oppression and overreaching through successive trials"—had no application here because the charges were severed for Mr. Currier's benefit and at his behest. *Currier* v. *Commonwealth*, 65 Va. App. 605, 609–613, 779 S. E. 2d 834, 836–837 (2015). The Virginia Supreme Court summarily affirmed. Because courts have reached conflicting results on the double jeopardy arguments Mr. Currier pressed in this case, we granted certiorari to resolve them. 583 U. S. \_\_\_ (2017).

## II

The Double Jeopardy Clause, applied to the States through the Fourteenth Amendment, provides that no person may be tried more than once "for the same offence." This guarantee recognizes the vast power of the sovereign, the ordeal of a criminal trial, and the injustice our criminal justice system would invite if prosecutors could treat

trials as dress rehearsals until they secure the convictions they seek. See *Green* v. *United States*, 355 U. S. 187, 188 (1957). At the same time, this Court has said, the Clause was not written or originally understood to pose "an insuperable obstacle to the administration of justice" in cases where "there is no semblance of [these] type[s] of oppressive practices." *Wade* v. *Hunter*, 336 U. S. 684, 688–689 (1949).

On which side of the line does our case fall? Mr. Currier suggests this Court's decision in *Ashe* v. *Swenson*, 397 U. S. 436 (1970), requires a ruling for him. There, the government accused a defendant of robbing six poker players in a game at a private home. At the first trial, the jury acquitted the defendant of robbing one victim. Then the State sought to try the defendant for robbing a second victim. This Court held the second prosecution violated the Double Jeopardy Clause. *Id.,* at 446. To be sure, the Clause speaks of barring successive trials for the same offense. And, to be sure, the State sought to try the defendant for a *different* robbery. But, the Court reasoned, because the first jury necessarily found that the defendant "was not one of the robbers," a second jury could not "rationally" convict the defendant of robbing the second victim without calling into question the earlier acquittal. *Id.,* at 445–446. In these circumstances, the Court indicated, any relitigation of the issue whether the defendant participated as "one of the robbers" would be tantamount to the forbidden relitigation of the same offense resolved at the first trial. *Id.,* at 445; see *Yeager* v. *United States*, 557 U. S. 110*,* 119–120 (2009).

*Ashe*'s suggestion that the relitigation of an issue can sometimes amount to the impermissible relitigation of an offense represented a significant innovation in our jurisprudence. Some have argued that it sits uneasily with this Court's double jeopardy precedent and the Constitution's original meaning. See, *e.g., Ashe*, *supra*, at 460–461

(Burger, C. J., dissenting); *Yeager*, *supra*, at 127–128 (Scalia, J., dissenting).  But whatever else may be said about *Ashe*, we have emphasized that its test is a demanding one.  *Ashe* forbids a second trial only if to secure a conviction the prosecution must prevail on an issue the jury necessarily resolved in the defendant's favor in the first trial.  See *Yeager*, *supra,* at 119–120; *id.,* at 127 (KENNEDY, J., concurring in part and concurring in judgment); *id.,* at 133–134 (ALITO, J., dissenting).  A second trial "is not precluded simply because it is unlikely—or even very unlikely—that the original jury acquitted without finding the fact in question."  *Ibid.*  To say that the second trial is tantamount to a trial of the same offense as the first and thus forbidden by the Double Jeopardy Clause, we must be able to say that "it would have been *irrational* for the jury" in the first trial to acquit without finding in the defendant's favor on a fact essential to a conviction in the second.  *Id.,* at 127 (opinion of KENNEDY, J.) (internal quotation marks omitted).

Bearing all that in mind, a critical difference immediately emerges between our case and *Ashe*.  Even assuming without deciding that Mr. Currier's second trial qualified as the retrial of the same offense under *Ashe*, he consented to it.  Nor does anyone doubt that trying all three charges in one trial would have prevented any possible *Ashe* complaint Mr. Currier might have had.

How do these features affect the double jeopardy calculus?  A precedent points the way.  In *Jeffers* v. *United States*, 432 U. S. 137 (1977), the defendant sought separate trials on each of the counts against him to reduce the possibility of prejudice.  The court granted his request.  After the jury convicted the defendant in the first trial of a lesser-included offense, he argued that the prosecution could not later try him for a greater offense.  In any other circumstance the defendant likely would have had a good argument.  Historically, courts have treated greater and

lesser-included offenses as the same offense for double
jeopardy purposes, so a conviction on one normally pre-
cludes a later trial on the other. *Id.,* at 150–151 (plurality
opinion); *Brown* v. *Ohio*, 432 U. S. 161, 168–169 (1977)
(collecting authorities). But, *Jeffers* concluded, it's differ-
ent when the defendant consents to two trials where one
could have done. If a single trial on multiple charges
would suffice to avoid a double jeopardy complaint, "there
is no violation of the Double Jeopardy Clause when [the
defendant] elects to have the . . . offenses tried separately
and persuades the trial court to honor his election." 432
U. S., at 152.

What was true in *Jeffers*, we hold, can be no less true
here. If a defendant's consent to two trials can overcome
concerns lying at the historic core of the Double Jeopardy
Clause, so too we think it must overcome a double jeop-
ardy complaint under *Ashe*. Nor does anything in *Jeffers*
suggest that the outcome should be different if the first
trial yielded an acquittal rather than a conviction when a
defendant consents to severance. While we acknowledge
that *Ashe*'s protections apply only to trials following ac-
quittals, as a general rule, the Double Jeopardy Clause
"'protects against a second prosecution for the same of-
fense after conviction'" as well as "'against a second prose-
cution for the same offense after acquittal.'" *Brown, su-
pra,* at 165. Because the Clause applies equally in both
situations, consent to a second trial should in general have
equal effect in both situations.

Holding otherwise would introduce an unwarranted
inconsistency not just with *Jeffers* but with other prece-
dents too. In *United States* v. *Dinitz*, 424 U. S. 600 (1976),
for example, this Court held that a defendant's mistrial
motion implicitly invited a second trial and was enough to
foreclose any double jeopardy complaint about it. In
reaching this holding, the Court expressly rejected "the
contention that the permissibility of a retrial depends on a

knowing, voluntary, and intelligent waiver" from the defendant. *Id.,* at 609 n. 11. Instead, it explained, none of the "prosecutorial or judicial overreaching" forbidden by the Constitution can be found when a second trial follows thanks to the defendant's motion. *Id.* at 607. In *United States* v. *Scott,* 437 U. S. 82 (1978), this Court likewise held that a defendant's motion effectively invited a retrial of the same offense, and "the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of [a] voluntary choice" like that. *Id.,* at 96, 99; see also *Evans* v. *Michigan,* 568 U. S. 313, 326 (2013) ("[R]etrial is generally allowed [when] the defendant consents to a disposition that contemplates reprosecution"). While relinquishing objections sometimes turns on state or federal procedural rules, these precedents teach that consenting to two trials when one would have avoided a double jeopardy problem precludes any constitutional violation associated with holding a second trial. In these circumstances, our cases hold, the defendant wins a potential benefit and experiences none of the prosecutorial "oppression" the Double Jeopardy Clause exists to prevent. Nor, again, can we discern a good reason to treat *Ashe* double jeopardy complaints more favorably than traditional ones when a defendant consents to severance.

Against these precedents, Mr. Currier asks us to consider others, especially *Harris* v. *Washington,* 404 U. S. 55 (1971) (*per curiam*) and *Turner* v. *Arkansas,* 407 U. S. 366 (1972) (*per curiam*). But these cases merely applied *Ashe*'s test and concluded that a second trial was impermissible. They did not address the question whether double jeopardy protections apply if the defendant *consents* to a second trial. Meanwhile, as we've seen, *Jeffers, Dinitz,* and *Scott* focus on that question directly and make clear that a defendant's consent dispels any specter of double jeopardy abuse that holding two trials might otherwise present.

This Court's teachings are consistent and plain: the "Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice." *Scott, supra*, at 99.

Mr. Currier replies that he had no real choice but to seek two trials. Without a second trial, he says, evidence of his prior convictions would have tainted the jury's consideration of the burglary and larceny charges. And, he notes, Virginia law guarantees a severance in cases like his unless the defendant and prosecution agree to a single trial. But no one disputes that the Constitution permitted Virginia to try all three charges at once with appropriate cautionary instructions. So this simply isn't a case where the defendant had to give up one constitutional right to secure another. Instead, Mr. Currier faced a lawful choice between two courses of action that each bore potential costs and rationally attractive benefits. It might have been a hard choice. But litigants every day face difficult decisions. Whether it's the defendant who finds himself in the shoes of Jeffers, Dinitz, and Scott and forced to choose between allowing an imperfect trial to proceed or seeking a second that promises its own risks. Or whether it's the defendant who must decide between exercising his right to testify in his own defense or keeping impeachment evidence of past bad acts from the jury. See, *e.g., Brown* v. *United States*, 356 U. S. 148, 154–157 (1958). This Court has held repeatedly that difficult strategic choices like these are "not the same as no choice," *United States* v. *Martinez-Salazar*, 528 U. S. 304, 315 (2000), and the Constitution "does not . . . forbid requiring" a litigant to make them, *McGautha* v. *California*, 402 U. S. 183, 213 (1971).

### III

Even if he voluntarily consented to holding the second trial, Mr. Currier argues, that consent did not extend to

the relitigation of any issues the first jury resolved in his favor. So, Mr. Currier says, the court should have excluded evidence suggesting he possessed the guns in Mr. Garrison's home, leaving the prosecution to prove that he possessed them only later, maybe down by the river. To support this argument, Mr. Currier points to issue preclusion principles in civil cases and invites us to import them for the first time into the criminal law through the Double Jeopardy Clause. In his view, the Clause should do much more than bar the retrial of the same offense (or crimes tantamount to the same offense under *Ashe*); it should be read now to prevent the parties from retrying any issue or introducing any evidence about a previously tried issue. While the dissent today agrees with us that the trial court committed no double jeopardy violation in holding the second trial, on this alternative argument it sides with Mr. Currier. See *post,* at 11, 12, 14–15.

We cannot. Even assuming for argument's sake that Mr. Currier's consent to *holding* a second trial didn't more broadly imply consent to the *manner* it was conducted, we must reject his argument on a narrower ground. Just last Term this Court warned that issue preclusion principles should have only "guarded application . . . in criminal cases." *Bravo-Fernandez* v. *United States*, 580 U. S. \_\_\_, \_\_\_ (2016) (slip op. at 4). We think that caution remains sound.

Mr. Currier's problems begin with the text of the Double Jeopardy Clause. As we've seen, the Clause speaks not about prohibiting the relitigation of issues or evidence but offenses. Contrast this with the language of the Reexamination Clause. There, the Seventh Amendment says that "[i]n Suits at common law . . . *no fact* tried by a jury, *shall be otherwise re-examined* in any Court of the United States, than according to the rules of the common law." (Emphasis added.) Words in one provision are, of course, often understood "by comparing them with other words

and sentences in the same instrument." 1 J. Story, Commentaries on the Constitution of the United States §400, p. 384 (1833). So it's difficult to ignore that only in the Seventh Amendment—and only for civil suits—can we find anything resembling contemporary issue preclusion doctrine.

What problems the text suggests, the original public understanding of the Fifth Amendment confirms. The Double Jeopardy Clause took its cue from English common law pleas that prevented courts from retrying a criminal defendant previously acquitted or convicted of the crime in question. See *Scott*, 437 U. S., at 87; 4 W. Blackstone, Commentaries on the Laws of England 329–330 (1769). But those pleas barred only repeated "prosecution for the same identical act *and* crime," not the retrial of particular issues or evidence. *Id.,* at 330 (emphasis added). As Sir Matthew Hale explained:

> "If *A.* commit a burglary . . . and likewise at the same time steal goods out of the house, if he be indicted of larciny for the goods and acquitted, yet he may be indicted for the burglary notwithstanding the acquittal. And *è converso*, if indicted for the burglary and acquitted, yet he may be indicted of the larciny, for they are several offenses, tho committed at the same time." 2 M. Hale, The History of the Pleas of the Crown, ch. 31, pp. 245–246 (1736 ed.).

Both English and early American cases illustrate the point. In *Turner's Case*, 30 Kel. J. 30, 84 Eng. Rep. 1068 (K. B. 1663), for example, a jury acquitted the defendant of breaking into a home and stealing money from the owner. Even so, the court held that the defendant could be tried later for the theft of money "stolen at the same time" from the owner's servant. *Ibid.* In *Commonwealth* v. *Roby*, 12 Pickering 496 (Mass. 1832), the court, invoking Blackstone, held that "[i]n considering the identity of the of-

fence, it must appear by the plea, that the offence charged in both cases was the same *in law* and *in fact*." *Id.,* at 509. The court explained that a second prosecution isn't precluded "if the offences charged in the two indictments be perfectly distinct in point of law, *however nearly they may be connected in fact*." *Ibid.* (emphasis added). Another court even ruled "that a man acquitted for stealing the horse hath yet been arraigned and convict for stealing the saddle, tho both were done at the same time." 2 Hale, *supra,* at 246. These authorities and many more like them demonstrate that early courts regularly confronted cases just like ours and expressly rejected the notion that the Double Jeopardy Clause barred the relitigation of issues or facts. See also *Grady* v. *Corbin*, 495 U. S. 508, 533–535 (1990) (Scalia, J., dissenting) (collecting authorities); 2 W. Hawkins, Pleas of the Crown, ch. 35, p. 371 (1726 ed.); 1 J. Chitty, Criminal Law 452–457 (1816); M. Friedland, Double Jeopardy 179, and n. 2 (1969). Any suggestion that our case presents a new phenomenon, then, risks overlooking this long history. See *post,* at 4–5 (GINSBURG, J., dissenting).

This Court's contemporary double jeopardy cases confirm what the text and history suggest. Under *Blockburger* v. *United States*, 284 U. S. 299 (1932), the courts apply today much the same double jeopardy test they did at the founding. *Id.,* at 304. To prevent a second trial on a new charge, the defendant must show an identity of *statutory elements* between the two charges against him; it's not enough that "a substantial overlap [exists] in the *proof* offered to establish the crimes." *Iannelli* v. *United States*, 420 U. S. 770, 785, n. 17 (1975) (emphasis added). Of course, *Ashe* later pressed *Blockburger*'s boundaries by suggesting that, in narrow circumstances, the retrial of an issue can be considered tantamount to the retrial of an offense. See *Yeager,* 557 U. S., at 119. But, as we've seen, even there a court's ultimate focus remains on the practi-

cal identity of offenses, and the only available remedy is
the traditional double jeopardy bar against the retrial of
the same offense—not a bar against the relitigation of
issues or evidence. See *id.,* at 119–120. Even at the outer
reaches of our double jeopardy jurisprudence, then, this
Court has never sought to regulate the retrial of issues or
evidence in the name of the Double Jeopardy Clause.

Nor in acknowledging this do we plow any new ground.
In *Dowling* v. *United States*, 493 U. S. 342 (1990), the
defendant faced charges of bank robbery. At trial, the
prosecution introduced evidence of the defendant's in-
volvement in an earlier crime, even though the jury in
that case had acquitted. Like Mr. Currier, the defendant
in *Dowling* argued that the trial court should have barred
relitigation of an issue resolved in his favor in an earlier
case and therefore excluded evidence of the acquitted
offense. But the Court refused the request and in doing so
expressly "decline[d] to extend *Ashe* . . . to exclude in all
circumstances, as [the defendant] would have it, relevant
and probative evidence that is otherwise admissible under
the Rules of Evidence simply because it relates to alleged
criminal conduct for which a defendant has been acquit-
ted." *Id.*, at 348. If a second trial is permissible, the
admission of evidence at that trial is governed by normal
evidentiary rules—not by the terms of the Double Jeop-
ardy Clause. "So far as merely evidentiary . . . facts are
concerned," the Double Jeopardy Clause "is inoperative."
*Yates* v. *United States*, 354 U. S. 298, 338 (1957).

On its own terms, too, any effort to transplant civil
preclusion principles into the Double Jeopardy Clause
would quickly meet trouble. While the Clause embodies a
kind of "claim preclusion" rule, even this rule bears little
in common with its civil counterpart. In civil cases, a
claim generally may not be tried if it arises out of the
same transaction or common nucleus of operative facts as
another already tried. Restatement (Second) of Judg-

ments §19 (1982); Moschzisker, Res Judicata, 38 Yale L. J. 299, 325 (1929). But in a criminal case, *Blockburger* precludes a trial on an offense only if a court has previously heard the same offense as measured by its statutory elements. 284 U. S., at 304. And this Court has emphatically refused to import into criminal double jeopardy law the civil law's more generous "same transaction" or same criminal "episode" test. See *Garrett* v. *United States*, 471 U. S. 773, 790 (1985); see also *Ashe,* 397 U. S., at 448 (Harlan, J., concurring).

It isn't even clear that civil preclusion principles would help defendants like Mr. Currier. Issue preclusion addresses the effect in a current case of a prior adjudication in *another case*. So it doesn't often have much to say about the preclusive effects of rulings "within the framework of a continuing action." 18A C. Wright & A. Miller, Federal Practice and Procedure §4434 (2d ed. 2002); see also *id.*, §4478. Usually, only the more flexible law of the case doctrine governs the preclusive effect of an earlier decision "within a single action." *Ibid.* And that doctrine might counsel against affording conclusive effect to a prior jury verdict on a particular issue when the parties *agreed* to hold a second trial covering much the same terrain at a later stage of the proceedings. Besides, even if issue preclusion is the right doctrine for cases like ours, its application usually depends "on 'an underlying confidence that the result achieved in the initial litigation was substantially correct.'" *Bravo-Fernandez*, 580 U. S., at \_\_\_ (slip op., at 4) (quoting *Standefer* v. *United States*, 447 U. S. 10, 23, n. 18 (1980)). As a result, the doctrine does not often bar the relitigation of issues when "[t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action." Restatement (Second) of Judgments §28. In criminal cases, of course, the government cannot obtain appellate review of acquittals. So a faithful application of civil

preclusion principles in our case and others like it might actually militate *against* finding preclusion. See *Bravo-Fernandez*, *supra,* at ___ (slip op., at 4); *Standefer*, *supra*, at 22–23, and n. 18.

Neither Mr. Currier nor the dissent offers a persuasive reply to these points. They cannot dispute that the text of the Double Jeopardy Clause, which bars a prosecution for the same offense, is inconsistent with an issue preclusion rule that purports to bar a "second prosecution involv[ing] . . . a different 'offense.'" *Post,* at 4. They decline to "engage" with the Clause's history, though the dissent appears to agree that the Clause was not originally understood to include an issue preclusion rule. See *post,* at 3–4, 13. Neither Mr. Currier nor the dissent seeks to show that, even taken on their own terms, civil issue preclusion principles would apply to cases like this one. Without text, history, or logic to stand on, the dissent leans heavily on a comparison to *Dowling*. In *Dowling*, the dissent emphasizes, the two trials involved different criminal episodes while the two trials here addressed the same set of facts. But *Dowling* did not rest its holding on this feature and the dissent does not explain its relevance. If issue preclusion really did exist in criminal law, why wouldn't it preclude the retrial of *any* previously tried issue, regardless whether that issue stems from the same or a different "criminal episode"?

In the end, Mr. Currier and the dissent must emphasize various policy reasons for adopting a new rule of issue preclusion into the criminal law. See *post,* at 4–5, 8–9. They contend that issue preclusion is "needed" to combat the "prosecutorial excesses" that could result from the proliferation of criminal offenses, *post,* at 4–5, though we aren't sure what to make of this given the dissent's later claim that "issue preclusion requires no showing of prosecutorial overreaching," *post,* at 8. In any event, there are risks with the approach Mr. Currier and the dissent pro-

pose. Consider, for example, the ironies that grafting civil preclusion principles onto the criminal law could invite. Issue preclusion is sometimes applied offensively against civil defendants who lost on an issue in an earlier case. *Parklane Hosiery Co.* v. *Shore*, 439 U. S. 322, 331–332 (1979). By parallel logic, could we expect the government to invoke the doctrine to bar criminal defendants from relitigating issues decided against them in a prior trial? It's an outcome few defendants would welcome but one some have already promoted. See, *e.g.,* Kennelly, Precluding the Accused: Offensive Collateral Estoppel in Criminal Cases, 80 Va. L. Rev. 1379, 1380–1381, 1416, 1426–1427 (1994); Vestal, Issue Preclusion and Criminal Prosecutions, 65 Iowa L. Rev. 281, 297, 320–321 (1980).

Maybe worse yet, consider the possible effect on severances. Today, some state courts grant severance motions liberally to benefit defendants. But what would happen if this Court unilaterally increased the costs associated with severance in the form of allowing issue preclusion for defendants only? Granting a severance is no small thing. It means a court must expend resources for two trials where the Constitution would have permitted one. Witnesses and victims must endure a more protracted ordeal. States sometimes accept these costs to protect a defendant from potential prejudice. But 20 States appearing before us have warned that some jurisdictions might respond to any decision increasing the costs of severed trials by making them less freely available. See Brief for Indiana et al. as *Amici Curiae* 4, 16–20. Of course, that's only a prediction. But it's a hard if unwanted fact that "[t]oday's elaborate body of procedural rules" can contribute to making "trials expensive [and] rare." W. Stuntz, The Collapse of American Criminal Justice 39 (2011). And it would be a mistake to ignore the possibility that by making severances more costly we might wind up making them rarer too.

The fact is, civil preclusion principles and double jeop-

ardy are different doctrines, with different histories, serving different purposes. Historically, both claim and issue preclusion have sought to "promot[e] judicial economy by preventing needless litigation." *Parklane Hosiery, supra,* at 326. That interest may make special sense in civil cases where often only money is at stake. But the Double Jeopardy Clause and the common law principles it built upon govern *criminal* cases and concern more than efficiency. They aim instead, as we've seen, to balance vital interests against abusive prosecutorial practices with consideration to the public's safety. The Clause's terms and history simply do not contain the rights Mr. Currier seeks.

Nor are we at liberty to rewrite those terms or that history. While the growing number of criminal offenses in our statute books may be cause for concern, see *post,* at 4–5 (GINSBURG, J., dissenting), no one should expect (or want) judges to revise the Constitution to address every social problem they happen to perceive. The proper authorities, the States and Congress, are empowered to adopt new laws or rules experimenting with issue or claim preclusion in criminal cases if they wish. In fact, some States have already done so. On these matters, the Constitution dictates no answers but entrusts them to a self-governing people to resolve.

\*

The judgment of the Virginia Supreme Court is

*Affirmed.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–1348

_____

## MICHAEL NELSON CURRIER, PETITIONER *v.* VIRGINIA

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF VIRGINIA

[June 22, 2018]

JUSTICE KENNEDY, concurring in part.

I join Parts I and II of the Court's opinion, which, in my view, suffice to resolve this case in a full and proper way.

There is a strong public "interest in giving the prosecution one complete opportunity to convict those who have violated its laws." *Arizona* v. *Washington*, 434 U. S. 497, 509 (1978). The reason that single opportunity did not occur in one trial here was because both parties consented to sever the possession charge to avoid introducing evidence of petitioner's prior conviction during his trial for burglary and larceny. Petitioner acknowledges that by consenting to severance he cannot argue that the Double Jeopardy Clause bars the second trial. See Brief for Petitioner 9–10. He instead contends that, even though he consented to severance, he preserved the double jeopardy protections applied in *Ashe* v. *Swenson*, 397 U. S. 436 (1970), protections that, in *Ashe*, were a bar to relitigation of factual issues adjudicated in a previous trial.

The Double Jeopardy Clause reflects the principle that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he

may be found guilty." *Green* v. *United States*, 355 U. S.
184, 187–188 (1957). But this "is not a principle which
can be expanded to include situations in which the de-
fendant is responsible for the second prosecution." *United
States* v. *Scott*, 437 U. S. 82, 95–96 (1978); see also *id.,* at
99 (The "Clause, which guards against Government op-
pression, does not relieve a defendant from the conse-
quences of his voluntary choice"). This rule recurs
throughout the Court's double jeopardy cases, see, *e.g.*,
*Jeffers* v. *United States*, 432 U. S. 137, 152 (1977); *Ohio* v.
*Johnson*, 467 U. S. 493, 500, n. 9, 502 (1984); *Evans* v.
*Michigan*, 568 U. S. 313, 326 (2013), and, in my view, it
controls here.

The end result is that when a defendant's voluntary
choices lead to a second prosecution he cannot later use
the Double Jeopardy Clause, whether thought of as pro-
tecting against multiple trials or the relitigation of issues,
to forestall that second prosecution. The extent of the
Double Jeopardy Clause protections discussed and defined
in *Ashe* need not be reexamined here; for, whatever the
proper formulation and implementation of those rights
are, they can be lost when a defendant agrees to a second
prosecution. Of course, this conclusion is premised on the
defendant's having a voluntary choice, and a different
result might obtain if that premise were absent. Cf.
*Turner* v. *Arkansas*, 407 U. S. 366, 367 (1972) (*per curiam*)
(applying *Ashe* to a second trial where state law prohibited
a single trial of the charges at issue).

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–1348

_____

## MICHAEL NELSON CURRIER, PETITIONER *v.* VIRGINIA

### ON WRIT OF CERTIORARI TO THE SUPREME COURT OF VIRGINIA

[June 22, 2018]

JUSTICE GINSBURG, with whom JUSTICE BREYER, JUSTICE SOTOMAYOR, and JUSTICE KAGAN join, dissenting.

Michael Nelson Currier was charged in Virginia state court with (1) breaking and entering, (2) grand larceny, and (3) possessing a firearm after having been convicted of a felony. All three charges arose out of the same criminal episode. Under Virginia practice, unless the prosecutor and the defendant otherwise agree, a trial court must sever a charge of possession of a firearm by a convicted felon from other charges that do not require proof of a prior conviction. Virginia maintains this practice recognizing that evidence of a prior criminal conviction, other than on the offense for which the defendant is being tried, can be highly prejudicial in jury trials.

After trial for breaking and entering and grand larceny, the jury acquitted Currier of both charges. The prosecutor then chose to proceed against Currier on the severed felon-in-possession charge. Currier objected to the second trial on double jeopardy grounds. He argued that the jury acquittals of breaking and entering and grand larceny established definitively and with finality that he had not participated in the alleged criminal episode. Invoking the issue-preclusion component of the double jeopardy ban, Currier urged that in a second trial, the Commonwealth could not introduce evidence of his alleged involvement in

breaking and entering and grand larceny, charges on which he had been acquitted. He further maintained that without allowing the prosecution a second chance to prove breaking and entering and grand larceny, the evidence would be insufficient to warrant conviction of the felon-in-possession charge.

I would hold that Currier's acquiescence in severance of the felon-in-possession charge does not prevent him from raising a plea of issue preclusion based on the jury acquittals of breaking and entering and grand larceny.

## I

This Court's decisions "have recognized that the [Double Jeopardy] Clause embodies two vitally important interests." *Yeager* v. *United States*, 557 U. S. 110, 117 (2009). "The first is the 'deeply ingrained' principle that 'the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.'" *Id.,* at 117–118 (quoting *Green* v. *United States*, 355 U. S. 184, 187–188 (1957)). The second interest the Clause serves is preservation of the "finality of judgments," 557 U. S., at 118 (internal quotation marks omitted), particularly acquittals, see *id.,* at 122–123 (an acquittal's "finality is unassailable"); *Evans* v. *Michigan*, 568 U. S. 313, 319 (2013) ("The law attaches particular significance to an acquittal." (internal quotation marks omitted)).

The Clause effectuates its overall guarantee through multiple protections. Historically, among those protections, the Court has safeguarded the right not to be subject to multiple trials for the "same offense." See *Brown* v. *Ohio*, 432 U. S. 161, 165 (1977). That claim-preclusive

rule stops the government from litigating the "same of-
fense" or criminal charge in successive prosecutions, re-
gardless of whether the first trial ends in a conviction or
an acquittal.  See *Bravo-Fernandez* v. *United States*, 580
U. S. \_\_\_, \_\_\_ (2016) (slip op., at 3); *Brown*, 432 U. S., at
165.  To determine whether two offenses are the "same,"
this Court has held, a court must look to the offenses'
elements.  *Blockburger* v. *United States*, 284 U. S. 299, 304
(1932).  If each offense "requires proof of a fact which the
other does not," *Blockburger* established, the offenses are
discrete and the prosecution of one does not bar later
prosecution of the other.  *Ibid.*  If, however, two offenses
are greater and lesser included offenses, the government
cannot prosecute them successively.  See *Brown*, 432 U. S.,
at 169.

   Also shielded by the Double Jeopardy Clause is the
issue-preclusive effect of an acquittal.  First articulated in
*Ashe* v. *Swenson*, 397 U. S. 436 (1970), the issue-
preclusive aspect of the Double Jeopardy Clause prohibits
the government from relitigating issues necessarily re-
solved in a defendant's favor at an earlier trial presenting
factually related offenses.  *Ashe* involved the robbery of six
poker players by a group of masked men.  *Id.,* at 437.
Missouri tried Ashe first for the robbery of Donald Knight.
*Id.,* at 438.  At trial, proof that Knight was the victim of a
robbery was "unassailable"; the sole issue in dispute was
whether Ashe was one of the robbers.  *Id.,* at 438, 445.  A
jury found Ashe not guilty.  *Id.,* at 439.  Missouri then
tried Ashe for robbing a different poker player at the same
table.  *Ibid.*  The witnesses at the second trial "were for
the most part the same," although their testimony for the
prosecution was "substantially stronger" than it was at the
first trial.  *Id.,* at 439–440.  The State also "refined its
case" by declining to call a witness whose identification
testimony at the first trial had been "conspicuously nega-
tive."  *Id.,* at 440.  The second time around, the State

secured a conviction.  *Ibid.*

Although the second prosecution involved a different victim and thus a different "offense," this Court held that the second prosecution violated the Double Jeopardy Clause.  A component of that Clause, the Court explained, rests on the principle that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."  *Id.,* at 443, 445.  Consequently, "after a jury determined by its verdict that [Ashe] was not one of the robbers," the State could not "constitutionally hale him before a new jury to litigate that issue again."  *Id.,* at 446.

In concluding that the Double Jeopardy Clause includes issue-preclusion protection for defendants, the Court acknowledged that no prior decision had "squarely held [issue preclusion] to be a constitutional requirement."  *Id.,* at 445, n. 10.  "Until perhaps a century ago," the Court explained, "few situations arose calling for [issue preclusion's] application."  *Ibid.*  "[A]t common law" and "under early federal criminal statutes, offense categories were relatively few and distinct," and "[a] single course of criminal conduct was likely to yield but a single offense."  *Ibid.* "[W]ith the advent of specificity in draftsmanship and the extraordinary proliferation of overlapping and related statutory offenses," however, "it became possible for prosecutors to spin out a startlingly numerous series of offenses from a single alleged criminal transaction."  *Ibid.*  With this proliferation, "the potential for unfair and abusive reprosecutions became far more pronounced."  *Ibid.*

Toward the end of the 19th century, courts increasingly concluded that greater protections than those traditionally afforded under the Double Jeopardy Clause were needed to spare defendants from prosecutorial excesses.  Federal courts, cognizant of the increased potential for exposing defendants to multiple charges based on the same crimi-

nal episode, borrowed issue-preclusion principles from the civil context to bar relitigation of issues necessarily resolved against the government in a criminal trial. *Ibid.*; cf. *United States* v. *Oppenheimer*, 242 U. S. 85, 87 (1916) ("It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt."). By 1970, when *Ashe* was decided, issue preclusion, "[a]lthough first developed in civil litigation," had become "an established rule of federal criminal law." *Ashe*, 397 U. S., at 443. The question presented in *Ashe* was whether issue preclusion is not just an established rule of federal criminal procedure, but also a rule of constitutional stature. The Court had no "hesitat[ion]" in concluding that it is. *Id.*, at 445.

Since *Ashe*, this Court has reaffirmed that issue preclusion ranks with claim preclusion as a Double Jeopardy Clause component. *Harris* v. *Washington*, 404 U. S. 55, 56 (1971) (*per curiam*). Given criminal codes of prolix character, issue preclusion both arms defendants against prosecutorial excesses, see *Ashe*, 397 U. S., at 445, n. 10, and preserves the integrity of acquittals, see *Yeager*, 557 U. S., at 118–119. See also *id.,* at 119 (Double Jeopardy Clause shields defendants against "relitiga[tion] [of] any issue that was necessarily decided by a jury's acquittal in a prior trial").

## II

On March 7, 2012, a large safe containing some $71,000 in cash and 20 firearms was stolen from Paul and Brenda Garrison's home. When police recovered the safe, which had been dumped in a river, the firearms remained inside, but most of the cash was gone. After a neighbor reported seeing a white pickup truck leaving the Garrisons' driveway around the time of the theft, police identified the Garrisons' nephew, Bradley Wood, as a suspect. Wood later implicated Currier as an accomplice. A grand jury

indicted Currier for breaking and entering, grand larceny, and possessing a firearm after having been convicted of a felony. The felon aspect of the felon-in-possession charge was based on Currier's prior convictions for burglary and larceny. Currier was "in possession" of the firearms, the prosecution contended, based on his brief handling of the guns contained in the safe (taking them out and putting them back) when the remaining cash was removed from inside.

Virginia courts, like many others, recognize that trying a felon-in-possession charge together with offenses that do not permit the introduction of prior felony convictions can be hugely prejudicial to a defendant. See *Hackney* v. *Commonwealth*, 28 Va. App. 288, 293–294, 504 S. E. 2d 385, 388 (1998) (en banc). Evidence of prior convictions, they have observed, can "confus[e] the issues before the jury" and "prejudice the defendant in the minds of the jury by showing his or her depravity and criminal propensity." *Id.,* at 293, 504 S. E. 2d, at 388. Virginia courts therefore hold that "unless the Commonwealth and defendant agree to joinder, a trial court must sever a charge of possession of a firearm by a convicted felon from other charges that do not require proof of a prior conviction." *Id.,* at 295, 504 S. E. 2d, at 389. In Currier's case, the prosecution and Currier acceded to the Commonwealth's default rule, and the trial court accordingly severed the felon-in-possession charge from the breaking and entering and grand larceny charges.

The Commonwealth proceeded to try Currier first for breaking and entering and grand larceny. Witnesses for the prosecution testified to Currier's involvement in the crimes. First, Wood testified that Currier helped him break into the Garrisons' home and steal the safe. Second, the Garrisons' neighbor testified that she believed Currier was the passenger in the pickup truck she had seen leaving the Garrisons' residence. The prosecution also sought

to introduce evidence that a cigarette butt found in Wood's pickup truck carried Currier's DNA. But the court excluded that evidence because the prosecution failed to disclose it at least 21 days in advance of trial, as Virginia law required.

The sole issue in dispute at the first trial, Currier maintains, was whether he participated in the break-in and theft. See App. 35 (prosecutor's closing statement, stating "What is in dispute? Really only one issue and one issue alone. Was the defendant, Michael Currier, one of those people that was involved in the offense?"). The case was submitted to the jury, which acquitted Currier of both offenses.

Despite the jury's acquittal verdicts, the prosecution proceeded against Currier on the felon-in-possession charge. In advance of his second trial, Currier moved to dismiss the gun-possession charge based on the issue-preclusion component of the Double Jeopardy Clause. He urged that the jury at his first trial rejected the government's contention that he was involved in the break-in and theft. Cf. *Ashe*, 397 U. S., at 446 (common issue in first and second trials was whether Ashe was one of the robbers). If the government could not attempt to prove anew his participation in the break-in and theft, he reasoned, there would be no basis for a conviction on the gun-possession charge. *I.e.,* his involvement in handling the guns, on the government's theory of the case, depended on his anterior involvement in breaking and entering the Garrisons' residence and stealing their safe. The trial court refused to dismiss the prosecution or to bar the government from introducing evidence of Currier's alleged involvement in the break-in and theft.

At the second trial, the prosecution shored up its attempt to prove Currier's participation in the break-in and theft. The witnesses refined their testimony. Remedying its earlier procedural lapse by timely notifying Currier,

the prosecution introduced the cigarette butt evidence. And, of course, to show Currier was a felon, the prosecution introduced his prior burglary and larceny convictions. The jury found Currier guilty of the felon-in-possession offense.

## III

The Court holds that even if Currier could have asserted a double jeopardy issue-preclusion defense in opposition to the second trial, he relinquished that right by acquiescing in severance of the felon-in-possession charge. This holding is not sustainable. A defendant's consent to severance does not waive his right to rely on the issue-preclusive effect of an acquittal.

### A

It bears clarification first that, contra to the Court's presentation, issue preclusion requires no showing of prosecutorial overreaching. But cf. *ante,* at 7 (stating that "the Double Jeopardy Clause exists to prevent [prosecutorial oppression]"). This Court so ruled in *Harris* v. *Washington*, 404 U. S. 55, and it has subsequently reinforced the point in *Turner* v. *Arkansas*, 407 U. S. 366 (1972) (*per curiam*), and *Yeager* v. *United States*, 557 U. S. 110.

In *Harris*, the Washington Supreme Court declined to give an acquittal issue-preclusive effect because there was "no indication of bad faith of the state in deliberately making a 'trial run' in the first prosecution." *State* v. *Harris*, 78 Wash. 2d 894, 901, 480 P. 2d 484, 488 (1971). The State Supreme Court further observed that "it was to the advantage of the defendant, and not the state, to separate the trials" because certain evidence was inadmissible in the first trial that would be admissible in the second. *Id.,* at 898, 480 P. 2d, at 486. This Court reversed and explained that an acquittal has issue-preclusive effect "irrespective of the good faith of the State in bringing

successive prosecutions." *Harris*, 404 U. S., at 57.

In *Turner*, Arkansas prosecutors believed the defendant had robbed and murdered someone. 407 U. S., at 366. An Arkansas statute required that murder be charged separately, with no other charges appended. *Id.,* at 367. After a jury acquitted Turner on the murder charge, the State sought to try him for robbery. *Id.,* at 366–367. Even though state law, not an overzealous prosecutor, dictated the sequential trials, this Court held that the defendant was entitled to assert issue preclusion and found the case "squarely controlled by *Ashe.*" *Id.,* at 370.

In *Yeager*, the defendant stood trial on numerous factually related offenses. 557 U. S., at 113–114. After a jury acquitted on some counts but hung on others, the prosecution sought to retry a number of the hung counts. *Id.,* at 115. The defendant argued that issue preclusion should apply in the second trial. In opposition, the prosecution stressed that a retrial "presen[ted] none of the governmental overreaching that double jeopardy is supposed to prevent." Brief for United States in *Yeager* v. *United States*, O. T. 2008, No. 08–67, p. 26 (internal quotation marks omitted). Indeed, the prosecution had "attempted to bring all the charges in a single proceeding," and it was seeking a second trial on some charges only "because the jury hung." *Ibid.* The Court did not regard as controlling the lack of prosecutorial overreaching. Instead, it emphasized that "[a] jury's verdict of acquittal represents the community's collective judgment regarding all the evidence and arguments presented to it" and that, once rendered, an acquittal's "finality is unassailable." 557 U. S., at 122–123.

B

There is in Currier's case no suggestion that he expressly waived a plea of issue preclusion at a second trial, or that he failed to timely assert the plea. Instead, the conten-

tion, urged by the prosecution and embraced by this Court, is that Currier surrendered his right to assert the issue-preclusive effect of his first-trial acquittals by consenting to two trials.

This Court "indulge[s] every reasonable presumption against waiver of fundamental constitutional rights." *Johnson* v. *Zerbst*, 304 U. S. 458, 464 (1938) (internal quotation marks omitted). It has found "waiver by conduct" only where a defendant has engaged in "conduct inconsistent with the assertion of [the] right." *Pierce Oil Corp.* v. *Phoenix Refining Co.*, 259 U. S. 125, 129 (1922). For example, a defendant who "voluntarily absents himself" from trial waives his Sixth Amendment right to be present. *Taylor* v. *United States*, 414 U. S. 17, 19 (1973) (*per curiam*) (internal quotation marks omitted). Similarly, a defendant who "obtains the absence of a witness by wrongdoing" may "forfeit" or "waive" his Sixth Amendment right to confront the absent witness. *Davis* v. *Washington*, 547 U. S. 813, 833 (2006). Where, however, a defendant takes no action inconsistent with the assertion of a right, the defendant will not be found to have waived the right.

Currier took no action inconsistent with assertion of an issue-preclusion plea. To understand why, one must comprehend just what issue preclusion forecloses. Unlike the right against a second trial for the same offense (claim preclusion), issue preclusion prevents relitigation of a previously rejected theory of criminal liability without necessarily barring a successive trial. Take *Ashe*, for example. Issue preclusion prevented the prosecution from arguing, at a second trial, that Ashe was one of the robbers who held up the poker players at gunpoint. But if the prosecution sought to prove, instead, that Ashe waited outside during the robbery and then drove the getaway car, issue preclusion would not have barred that trial. Similarly here, the prosecution could not again attempt to

prove that Currier participated in the break-in and theft of the safe at the Garrisons' residence. But a second trial could be mounted if the prosecution alleged, for instance, that Currier was present at the river's edge when others showed up to dump the safe in the river, and that Currier helped to empty out and replace the guns contained in the safe.

In short, issue preclusion does not operate, as claim preclusion does, to bar a successive trial altogether. Issue preclusion bars only a subset of possible trials—those in which the prosecution rests its case on a theory of liability a jury earlier rejected. That being so, consenting to a second trial is not inconsistent with—and therefore does not foreclose—a defendant's gaining the issue-preclusive effect of an acquittal.

The Court cites *Jeffers* v. *United States*, 432 U. S. 137 (1977), *United States* v. *Dinitz*, 424 U. S. 600 (1976), and *United States* v. *Scott*, 437 U. S. 82 (1978), as support for a second trial, on the ground that Currier consented to it. Those decisions do not undermine the inviolacy of an acquittal.

In *Jeffers*, the defendant was charged with two offenses, one of which was a lesser included offense of the other. 432 U. S., at 140–141, 150. He asked for, and gained, separate trials of the two charges. *Id.,* at 142–143. After *conviction* on the lesser included charge, he argued that a second trial on the remaining charge would violate his double jeopardy right "against multiple prosecutions." *Id.,* at 139, 143–144. A plurality of this Court rejected Jeffers' argument, reasoning that he had waived the relevant right because he was "solely responsible for the successive prosecutions." *Id.,* at 154.

*Jeffers* presented a claim-preclusion question. The Court there said not one word about issue preclusion. Nor did the Court address the staying power of an acquittal. It had no occasion to do so, as Jeffers was *convicted* on the

first charge. Indeed, some years later, three Justices, including the author of the *Jeffers* plurality, stated: "There is no doubt that had the defendant in *Jeffers* been *acquitted* at the first trial, the [issue-preclusion protection] embodied in the Double Jeopardy Clause would have barred a second trial on the greater offense." *Green* v. *Ohio*, 455 U. S. 976, 980 (1982) (White, J., joined by Blackmun and Powell, JJ., dissenting from the denial of certiorari) (emphasis added).

*Dinitz* and *Scott* are even weaker reeds. In *Dinitz*, the defendant requested, and gained, a mistrial after the trial judge expelled his lead counsel from the courtroom. 424 U. S., at 602–605. In *Scott*, the defendant sought and obtained dismissal of two of three counts prior to their submission to the jury. 437 U. S., at 84. The question in each case was whether the defendant's actions deprived him of the right to be spared from a second trial on the same offenses. Both decisions simply concluded that when a defendant voluntarily seeks to terminate a trial before a substantive ruling on guilt or innocence, the Double Jeopardy Clause is not offended by a second trial. The cases, however, said nothing about the issue-preclusive effect of a prior acquittal at a subsequent trial. Cf. *Burks* v. *United States*, 437 U. S. 1, 17 (1978) ("It cannot be meaningfully said that a person 'waives' his right to a judgment of acquittal by moving for a new trial."). As was the case in *Jeffers*, *Dinitz* and *Scott* presented no occasion to do so.[1]

---

[1] *Ohio* v. *Johnson*, 467 U. S. 493 (1984), cited by JUSTICE KENNEDY, *ante,* at 2, is not in point. It, too, like *Jeffers*, *Scott*, and *Dinitz*, involved claim preclusion, not issue preclusion, *i.e.,* trial of greater offenses after guilty pleas to lesser offenses. See *supra,* at 2–3. The case does contain an enigmatic footnote stating, "in a case such as this, where the State has made no effort to prosecute the charges seriatim, the considerations of double jeopardy protection implicit in the application of [issue preclusion] are inapplicable." 467 U. S., at 500, n. 9. True in a case like *Johnson*, which involved no prior acquittals, I would not read more into a terse, unelaborated footnote that contains no citation.

### IV

Venturing beyond JUSTICE KENNEDY's rationale for resolving this case, the plurality would take us back to the days before the Court recognized issue preclusion as a constitutionally grounded component of the Double Jeopardy Clause. See *ante,* at 14 (questioning whether issue preclusion "really . . . exist[s] in criminal law"). I would not engage in that endeavor to restore things past.[2]

One decision, however, should be set straight. The plurality asserts that *Dowling* v. *United States*, 493 U. S. 342 (1990), established that issue preclusion has no role to play in regulating the issues or evidence presented at a successive trial. *Ante,* at 12. *Dowling* did no such thing. The case is tied to Federal Rule of Evidence 404(b), which allows the prosecution to introduce evidence of a defendant's past criminal conduct for described purposes other

_____

*Evans* v. *Michigan*, 568 U. S. 313 (2013), cited by the Court, *ante,* at 7, and JUSTICE KENNEDY, *ante,* at 2, is even further afield. There, the trial court erroneously granted a judgment of acquittal. The State sought retrial in view of the error. This Court held that, despite the error, the acquittal was a final judgment, which could not be undone. 568 U. S., at 316. Whatever may be said of *Evans*, that decision is certainly no authority for watering down the issue-preclusive effect of a judgment acquitting the defendant.

*Garrett* v. *United States*, 471 U. S. 773 (1985), cited by the plurality, *ante,* at 13, also involves claim preclusion, not issue preclusion. The Court held, unremarkably, that a crime transpiring in one day is not the "same offense" as a continuing criminal enterprise spanning more than five years. *Id.,* at 788.

[2] If issue preclusion does exist in criminal law, the plurality asserts, it has only "guarded application," *Bravo-Fernandez* v. *United States*, 580 U. S. ___, ___ (2016) (slip op., at 4). See *ante,* at 9. I do not gainsay that assertion. *Bravo-Fernandez* itself, however, involved the special problem of inconsistent verdicts rendered by the same jury. It held only that an acquittal cannot convey rejection of the prosecutor's allegations when the jury simultaneously convicts the defendant of an offense turning on acceptance of the same allegations. 580 U. S., at ___ (slip op., at 2).

than to show a defendant's bad character. See Fed. Rule Evid. 404(b)(2). The defendant in *Dowling* was prosecuted for robbing a bank. 493 U. S., at 344. To bolster its case that Dowling was the perpetrator, the Government sought to introduce evidence that Dowling participated in a home invasion two weeks after the bank robbery. *Id.,* at 344–345. One difficulty for the prosecution: Dowling had been acquitted of the home invasion. *Id.,* at 345. Nevertheless, the trial court admitted the evidence, informing the jurors that Dowling had been acquitted of the home-invasion charge and instructing them on the "limited purpose" for which the evidence was introduced. *Id.,* at 345–346.

The Court in *Dowling* "decline[d] to extend *Ashe*" to forbid the prosecution from introducing evidence, under Rule 404(b), of a crime for which the defendant had been acquitted, one involving criminal conduct unrelated to the bank robbery for which Dowling stood trial. *Id.,* at 348. The charge for which Dowling was acquitted took place at a different time and involved different property, a different location, and different victims. *Id.,* at 344. See also *United States* v. *Felix*, 503 U. S. 378, 386 (1992) (stressing that the two crimes in *Dowling* were "unrelated"). It surely could not be said that, in the bank robbery trial, Dowling was being tried a second time for the later-occurring home invasion offense. Here, by contrast, the two trials involved the same criminal episode. See *Ashe*, 397 U. S., at 446 ("same robbery"); *Turner*, 407 U. S., at 368–369 ("the same set of facts, circumstances, and the same occasion" (internal quotation marks omitted)).

Extending *Dowling* from the Evidence Rule 404(b) context in which it was embedded to retrials involving the same course of previously acquitted conduct would undermine issue-preclusion's core tenet. That tenet was well stated by Judge Friendly in *United States* v. *Kramer*, 289 F. 2d 909 (CA2 1961):

> "A defendant who has satisfied one jury that he had no responsibility for a crime ought not be forced to convince another of this [lack of responsibility]. . . . The very nub of [issue preclusion] is to extend *res judicata* beyond those cases where the prior judgment is a complete bar. The Government is free, within limits set by the Fifth Amendment, to charge an acquitted defendant with other crimes claimed to arise from the same or related conduct; but it may not prove the new charge by asserting facts necessarily determined against it on the first trial . . . ." *Id.,* at 915–916 (citation omitted).

So here. The first trial established that Currier did not participate in breaking and entering the Garrisons' residence or in stealing their safe. The government can attempt to prove Currier possessed firearms through a means other than breaking and entering the Garrisons' residence and stealing their safe. But the government should not be permitted to show in the felon-in-possession trial what it failed to show in the first trial, *i.e.,* Currier's participation in the charged breaking and entering and grand larceny, after a full and fair opportunity to do so.

\*    \*    \*

For the reasons stated, I would reverse the judgment of the Virginia Supreme Court.