

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0711-18

### EX PARTE BRANDON JOSEPH ADAMS, Appellant

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### TAYLOR COUNTY

**WALKER, J., delivered the opinion for a unanimous Court. KELLER, P.J., filed a concurring opinion in which HERVEY, YEARY, and SLAUGHTER, JJ., joined.**

## O P I N I O N

This case involves the doctrine of collateral estoppel embodied in the Double Jeopardy Clause of the Fifth Amendment. At issue is whether the State can prosecute Appellant, Brandon Joseph Adams, for aggravated assault for stabbing Joe Romero after Appellant was acquitted in an earlier trial of aggravated assault for stabbing Joe's brother, Justin Romero, in the same incident. We find that collateral estoppel is inapplicable to the facts of this case, and the State is not barred from prosecuting Appellant. We reverse the judgment of the court of appeals.

## I — Background

The reporter's record of the first trial shows that Justin Romero and Luke Hisey became involved in a physical fight, which ended after Appellant stabbed Justin and Justin's brother, Joe, who was standing nearby. According to Alisha Graves, Joe's then-girlfriend, Justin and Hisey exchanged words and then began fighting and rolling on the ground. Graves heard Joe tell Appellant that he needed to stay out of it. She also heard Joe tell Justin and Hisey to cut it out and that the fight was already over. Joe again told Appellant that he needed to back off. Joe repeated to Justin and Hisey that it was time to cut it out because they were going to wake up the next morning and apologize to each other. The next thing Graves saw was Appellant over Justin, and she heard someone yelling that there was a knife. At that point, Justin came out of the fight, and he was bleeding. Graves added that while Justin was on the ground fighting with Hisey, she saw Appellant stab Justin several times in the back, and she also saw Joe get stabbed in the back or upper shoulder area.

According to Joe, when Justin and Hisey began arguing, Joe initially tried to calm the two down. Because Justin and Hisey would not stop, Joe relented and told them to "go ahead and get it over with," and the two started fighting. They squared up, and it was a fair fight until Hisey was knocked down. Joe pushed Justin back to allow Hisey to get up in order for the fight to stay fair. Hisey was knocked down and let back up three different times. Eventually, Justin and Hisey started wrestling or rolling around on the ground. After Joe told the two of them "that's enough" and attempted to pull Justin off of Hisey, Joe felt hot liquid on himself not realizing that he had been stabbed. At that point, Justin yelled that someone had a knife, and then Justin began wrestling with Appellant.

According to Justin, he was fighting and wrestling Hisey on the ground for about thirty seconds until Joe broke them up and said "that's enough." Justin stood up and was then blindsided by Appellant, who came swinging a fist at Justin. Justin and Appellant then started fighting on the ground until Graves came out and started screaming that Appellant had a knife. Graves, Joe, and Justin all said that Appellant did not speak a word during the entire incident.

According to Hisey, he was attacked by Justin and ended up face down on the ground. Hisey covered his ears and face while Justin pummeled him about the head. He was then knocked unconscious and remembered very little else.

According to Appellant, Justin and Hisey were on the ground. Hisey was laying on the ground and getting his head pummeled by Justin. Appellant attempted to approach and break up the fight, but Joe stood in the way and said "just let them fight." Appellant replied that "it's not even a fight, he's out," referring to Hisey. Appellant went around Joe, and when Appellant got to Justin to pull him away from Hisey, Joe hit Appellant. Appellant stepped back and started to panic, so he reached for his pocketknife. At that point, Justin came at him, and Appellant just started swinging his knife. Appellant guessed that he hit Joe, but he did not know how close Joe was to him. Justin tackled Appellant, and Appellant felt a couple of punches so he just started swinging the knife and hit Justin. Admitting that he stabbed both Justin and Joe, Appellant said that he was trying to protect himself and Hisey. Hisey was down, and with both brothers coming at Appellant, he felt overwhelmed and was afraid that, just as Justin would not stop pummeling Hisey, the brothers would not stop pummeling Appellant, either.

Appellant was charged in two separate causes with aggravated assault against Justin and Joe Romero. The case alleging Justin as the victim went to trial first. The jury charge, instructing the jury

on aggravated assault with a deadly weapon and aggravated assault by causing serious bodily injury, also included defensive issues of use of deadly force in defense of a third person. The jury ultimately returned a verdict of "Not Guilty," and Appellant was acquitted.

The State then proceeded to trial on the instant case which alleged Joe as the victim. Appellant filed a pre-trial application for writ of habeas corpus claiming that the second prosecution would involve the same issue that was decided in the first trial, namely, whether Appellant was justified in using force in defense of a third person. Because of this, Appellant argued that the second trial was barred by collateral estoppel. A hearing was held, and Appellant presented the trial court with evidence including the transcript of the first trial, the jury's instructions from the first trial, and the judgment of acquittal.

In response, the State argued to the trial court that collateral estoppel did not apply because Appellant was tried for allegedly committing aggravated assault against Justin, and Appellant's defensive theory—defense of a third party—related to whether Appellant was justified in his use of force specifically against *Justin*. The instant case, the State argued, involved a different issue because the alleged victim, and the person against whom Appellant's use of force was directed, was *Joe*, a completely different person; thus, a jury decision that Appellant was justified in using force against Justin was not a decision that Appellant was justified in using force against Joe. Deciding the matter on the arguments of counsel, the trial court agreed with the State and denied Appellant's pre-trial application for writ of habeas corpus. The case proceeded to trial, the jury was unable to reach a verdict, and a mistrial was declared.

Appellant appealed the denial of his pre-trial habeas application, and the court of appeals held that Appellant's prosecution for aggravated assault as to Joe was collaterally estopped. *Ex parte*

*Adams*, — S.W.3d —, No. 11-17-00332-CR, 2018 WL 2994360 at *4 (Tex. App.—Eastland June 14, 2018). The court of appeals reversed the trial court's denial of Appellant's pre-trial habeas application and remanded with instructions to the trial court to grant habeas relief. *Id.* at *4. The State petitioned this Court for discretionary review, asking:

> When a defendant is acquitted on a defense of a third person theory after stabbing a person engaged in a fight with a friend, does the collateral estoppel component of the Double Jeopardy Clause as articulated in *Ashe v. Swenson* and this Court's opinions bar his subsequent prosecution for stabbing another person who was not fighting?

We find that Appellant's subsequent prosecution is not barred by collateral estoppel. Appellant's acquittal in the first trial was based on a defense specific to Justin Romero, and the issue of whether Appellant was justified in his use of force against Joe Romero, who was not fighting Hisey, was not necessarily decided by the jury in the first trial such that it is now subject to collateral estoppel.

## II — Double Jeopardy and Collateral Estoppel

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. This clause protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); *Aekins v. State*, 447 S.W.3d 270, 274 (Tex. Crim. App. 2014).

In *Ashe v. Swenson*, the Supreme Court recognized that the Fifth Amendment guarantee against double jeopardy also embodies the principle of collateral estoppel as a constitutional requirement. *Ashe v. Swenson*, 397 U.S. 436, 445 (1970). In *Ashe*, the evidence showed that three or four masked men robbed six men playing poker. *Id.* at 437. Ashe was put on trial for robbing one

of the poker players, but the jury found Ashe "not guilty due to insufficient evidence." *Id.* at 439. The State of Missouri then put Ashe on trial a second time for the robbery of one of the other poker players, and the second jury found Ashe guilty. *Id.* at 439–40. The Supreme Court determined that, at the first trial, the "single rationally conceivable issue in dispute before the jury was whether [Ashe] had been one of the robbers." *Id.* at 445. This was so because the first jury could not have rationally found, from the record of the first trial, that the robbery did not occur or that the victim named in the first trial was not a victim of that robbery. *Id.*; *see also id.* at 438 ("The proof that an armed robbery had occurred . . . was unassailable."). Missouri was therefore barred by the doctrine of collateral estoppel from trying Ashe for the robbery of any of the other poker players, because identity would be an ultimate issue in each such trial and Ashe had already been acquitted of being one of the robbers. *Id.* at 446.

In holding that Missouri was barred from prosecuting Ashe a second time, the Supreme Court stated that "[f]or whatever else that constitutional guarantee [against double jeopardy] may embrace, it surely protects a man who has been acquitted from having to 'run the gauntlet' a second time." *Id.* at 445–46. Collateral estoppel "stands for an extremely important principle . . . when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443.

Thus, as we explained in *Rollerson*:

[U]nder the collateral-estoppel component of double jeopardy, the government may not litigate a specific elemental fact to a competent factfinder (judge or jury), receive an adverse finding by that factfinder on the specific fact, learn from its mistakes, hone its prosecutorial performance, and relitigate that same factual element that the original factfinder had already decided against the government.

*Rollerson v. State*, 227 S.W.3d 718, 730 (Tex. Crim. App. 2007); *Ashe*, 397 U.S. at 447 ("'No doubt

the prosecutor felt the state had a provable case on the first charge and, when he lost, he did what every good attorney would do—he refined his presentation in light of the turn of events at the first trial.' But this is precisely what the constitutional guarantee forbids.").

> Therefore:

> In applying the doctrine of collateral estoppel, courts must first determine whether the jury determined a specific fact, and if so, how broad—in terms of time, space and content—was the scope of its finding. *Before collateral estoppel will apply to bar relitigation of a discrete fact, that fact must necessarily have been decided in favor of the defendant in the first trial.*

*Ex parte Watkins*, 73 S.W.3d 264, 268 (Tex. Crim. App. 2002) (emphasis added); *see also Rollerson*, 227 S.W.3d at 731 (emphasizing same).

The Supreme Court, in *Currier v. Virginia*, recently reiterated the requirement that the specific issue be necessarily decided. *Currier v. Virginia*, 138 S.Ct. 2144, 2150 (2018). The *Ashe* test is a demanding one, and *Ashe* forbids a second trial only if a conviction in the second trial requires a finding in the government's favor on an issue the jury necessarily resolved in the defendant's favor in the first trial. *Id.* A second trial "is not precluded simply because it is unlikely—or even very unlikely—that the original jury acquitted without finding the fact in question." *Id.* (quoting *Yeager v. United States*, 557 U.S. 110, 133-34 (2009) (Alito, J., dissenting)); *see also Watkins*, 73 S.W.3d at 268–69 ("The mere possibility that a fact may have been determined in a former trial is insufficient to bar relitigation of that same fact in a second trial."). Thus, courts must be able to say that "it would have been *irrational* for the jury" to acquit in the first trial without finding in the defendant's favor on a fact essential to a conviction in the second, in order to say that the second trial is tantamount to a trial of the same offense as the first and thus forbidden by the Double Jeopardy Clause. *Id.* (quoting *Yeager*, 557 U.S. at 127) (Kennedy, J., concurring)).

### III — What Issue Was Necessarily Decided in the First Trial?

The court of appeals, in considering which issue was determined in the first trial, concluded that "[t]he only issue upon which the jury could have acquitted Adams was on the defensive issue submitted to the jury." *Adams*, 2018 WL 2994360 at *2. After reviewing the record, we agree that Appellant's acquittal was due to a jury finding in his favor on the defensive issue. However, the court of appeals applied the brush too broadly. The defensive issue decided by the jury at the first trial did not encompass both Justin and Joe. The defensive issue in first trial specifically related to Justin only, and the jury did not necessarily decide the matter as to Joe.

In determining which facts were necessarily determined by the jury, the natural place to begin is the jury's instructions from the first trial, which told the jury the particular circumstances under which it was to return a "Not Guilty" verdict. The instructions, which were admitted into evidence at the pre-trial habeas hearing, reveal that Appellant was charged in the first trial with aggravated assault under two paragraphs: (1) aggravated assault by use of a deadly weapon; and (2) aggravated assault by causing serious bodily injury. For paragraph one, the instructions told the jury that it should find Appellant "Not Guilty" under two circumstances. First, the jury was to return a "Not Guilty" verdict if the jury found that the State did not prove aggravated assault by use of a deadly weapon.[1]

---

[1] Specifically, the application section relating to paragraph one of the indictment told the jury:

> You must decide whether the state has proved, beyond a reasonable doubt, three elements. The elements are that –
>
> 1.     the defendant, in Taylor County, Texas, on or about the 18th day of October, 2015, caused bodily injury to Justin Paul Romero; and

Second, even if the jury agreed that the State proved aggravated assault by use of a deadly weapon, the jury was to return a "Not Guilty" verdict if it found that the State failed to overcome the defensive theory. The application section relating to deadly force in defense of another told the jury:

> If you have found the state has proved the offense beyond a reasonable doubt, you must next decide whether the state has proved that the defendant's conduct was not justified by defense of another.
>
> To decide the issue of defense of another, you must determine whether the state has proved, beyond a reasonable doubt, one of the following elements. The elements are that –
>
> 1. the defendant did not believe his conduct was immediately necessary to protect Luke Hisey against Justin Paul Romero's use or attempted use of unlawful deadly force; or
>
> 2. the defendant's belief was not reasonable; or
>
> 3. under the circumstances as the defendant reasonably believed them to be, the defendant would not have been permitted to use force or deadly force to protect himself against the unlawful force or unlawful deadly force with which the defendant reasonably believed Justin Paul Romero was threatening Luke Hisey.
>
> . . .
>
> If you find that the state has failed to prove, beyond a reasonable doubt, either

---

> 2. The defendant did this –
>    a. intending to cause bodily injury; or
>    b. knowing that he would cause bodily injury; and
>
> 3. the defendant, during the alleged assault, used a knife, a deadly weapon.
>
> . . .
>
> If you all agree the state has failed to prove, beyond a reasonable doubt, one or more of elements 1, 2 and 3 listed above, you must find the defendant "not guilty" of aggravated assault as alleged in the first paragraph of the indictment.

Rep. R. vol. 3, Applicant's Ex. 2, 5.

element 1, 2 or 3 listed above, you must find the defendant "not guilty" of the offense of aggravated assault as alleged in paragraph one of the indictment.

Rep. R. vol. 3, Applicant's Ex. 2, at 7–8. The jury was similarly instructed as to paragraph two of the indictment, and it was to find Appellant "Not Guilty" if it agreed that the State failed to prove aggravated assault by causing serious bodily injury,[2] or, if it agreed that the State proved aggravated assault by causing serious bodily injury, it nevertheless found that the State failed to overcome the defense.[3] Thus, by its "Not Guilty" verdict, the jury must have either determined that the State failed to prove aggravated assault or that the State failed to disprove the defense. From our review of the evidence of the first trial, the "single rationally conceivable issue in dispute before the jury," *Ashe*, 397 U.S. at 445, was whether Appellant was reasonably acting to defend Hisey against Justin's attack.

At trial, Appellant did not contest whether aggravated assault was proven. The defense voir dire predominantly discussed the defensive issue and the State's burden to disprove the defense. In his testimony, Appellant did not deny that there was an assault,[4] and during closing argument,

---

[2] *Id.* at 10.

[3] *Id.* at 12.

[4]
Q.  . . . And that's something we've let this jury know from the beginning is that there was an assault, correct?

A.  Right, correct.

Q.  And you don't deny that, correct?

A.  No, sir.

Rep. R. vol. 3, Applicant's Ex. 1, Rep. R. vol. 2, 44–45 in *State v. Adams*, No. 26,816-A (42nd Dist. Ct., Taylor Cty., Tex. Sept. 19, 2017).

counsel began by stating that "there was an assault" and then proceeded to focus on the defensive issue.[5]

Furthermore, from the testimony of the first trial, including that of Appellant himself, the question of whether Appellant committed aggravated assault by the use of a deadly weapon or by causing serious bodily injury could not rationally be in dispute. Regarding whether Appellant caused Justin's injuries, Appellant testified that he was swinging his knife at Justin, and there was ample evidence that Justin was stabbed. There was no evidence that some other person stabbed Justin. Indeed, Graves testified that she actually saw Appellant stab Justin.

As for evidence showing that Appellant caused Justin's injuries intentionally or knowingly, Appellant explained that when he drew his knife, he was trying to protect himself and Hisey. In addition, Appellant's intent may be inferred from the extent of Justin's injuries. *Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018); *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *see also Fearance v. State*, 620 S.W.2d 577, 584 (Tex. Crim. App. 1980) ("Thus, we may say that the repeated stabbing of [the victim] by appellant while astride him is enough . . . to find that it was done deliberately, and, perforce, intentionally."). Justin testified that he suffered fifteen or sixteen stab wounds. His hospital records indicated that he had eleven injuries. Whichever amount is correct, the number of injuries is strong evidence that Justin's injuries were intentionally inflicted.

Finally, the evidence does not leave room to characterize what occurred as a mere simple assault instead of aggravated assault by use of a deadly weapon or by causing serious bodily injury. Justin testified that he had to have surgery, and his hospital records confirmed that he had to have

---

[5] *Id.* at 62 ("Was there an assault? Yes, there was an assault. But our law provides justification for an assault or a defense to an assault, and that's what we tried to stay on point to and that we've tried to show you.").

surgery to repair a collapsed lung. The records also indicated that Justin had a sucking chest wound, which a doctor testified could be fatal and is a common cause of death among trauma victims. Justin further testified that as a consequence of injuries to his arm, he now has impaired use of his hand. Because Appellant used the knife in a manner capable of causing death or serious bodily injury, the knife was a deadly weapon, and Appellant caused serious bodily injury.

From the evidence of the first trial, the jury could not have rationally found that Appellant did not commit aggravated assault or that Justin was not the victim of that assault. *See Ashe*, 397 U.S. at 445. The evidence of Appellant's aggravated assault against Justin, along with Appellant's defensive strategy of admitting assault but justifying it as necessary to defend Hisey from Justin, lead to the conclusion that the jury's "Not Guilty" verdict could have only come about because the jury accepted Appellant's defense that he needed to step in to protect Hisey.

Therefore, we agree with the court of appeals that "[t]he only issue upon which the jury could have acquitted [Appellant] was on the defensive issue submitted." *Adams*, 2018 WL 2994360 at *2. However, the defensive issue that was submitted to the jury told the jury what it had to find in order to acquit Appellant:

> If you find that the state has failed to prove, beyond a reasonable doubt, either element 1, 2 or 3 listed above, you must find the defendant "not guilty" of the offense of aggravated assault as alleged in paragraph one of the indictment.

Rep. R. vol. 3, Applicant's Ex. 2, at 8. Because the jury found Appellant "Not Guilty," it must have found that the State failed to prove any of the three elements, which were:

1. the defendant did not believe his conduct was immediately necessary to protect Luke Hisey against *Justin Paul Romero's* use or attempted use of unlawful deadly force; or

2. the defendant's belief was not reasonable; or

3. under the circumstances as the defendant reasonably believed them to be, the defendant would not have been permitted to use force or deadly force to protect himself against the unlawful force or unlawful deadly force with which the defendant reasonably believed *Justin Paul Romero* was threatening Luke Hisey.

*Id.* at 7–8 (emphasis added). Plainly, the jury's "Not Guilty" verdict meant it determined that Appellant was justified in his use of force against "Justin Paul Romero," specifically. The issue submitted to the jury did not ask the jury to determine whether Appellant was justified in his use of force against Joe.

Therefore, the jury's determination in favor of Appellant on the defensive issue does not mean that the jury necessarily decided that Appellant was justified in using force against Joe. Perhaps the jury did agree during deliberations that Appellant also justifiably used force against Joe. But that was not a basis the jury was given from which it could find Appellant "Not Guilty." Appellant's acquittal could have only come about due to the jury finding he was justified in using force against Justin. Because the issue in regard to Joe was not necessarily decided in the first trial, the State was not barred from litigating the issue in a second trial.

### IV — Conclusion

In conclusion, the jury's "Not Guilty" verdict acquitting Appellant of aggravated assault against Justin Romero was not a final jury determination that Appellant was justified in using force against Joe Romero to defend Hisey. Collateral estoppel as to the latter issue does not apply. The judgment of the court of appeals is reversed, and the matter is remanded for proceedings consistent with this opinion.

Delivered: October 9, 2019
Publish