# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00754-CR

---

**Florentino Richard Gonzales, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2012-598, THE HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Florentino Richard Gonzales was convicted of four counts of indecency with a child and two counts of aggravated sexual assault, *see* Tex. Penal Code §§ 21.11, 22.021, but his convictions were reversed on appeal, *see Gonzales v. State*, No. 03-16-00541-CR, 2017 WL 6756812 (Tex. App.—Austin Dec. 21, 2017, pet. ref'd) (mem. op., not designated for publication). Following a subsequent trial on remand, Gonzales was convicted of eight counts of indecency with a child by contact and two counts of aggravated sexual assault of a child. *See* Tex. Penal Code §§ 21.11, 22.021. For the second trial, Gonzales elected to have the trial court assess his punishment, and the trial court sentenced him to ten years' imprisonment for each indecency conviction and to sixty years' imprisonment for each aggravated-sexual-assault conviction. In this appeal, Gonzales challenges his convictions from the second trial and argues that double jeopardy and collateral estoppel barred the two aggravated-sexual-assault convictions and that

the trial court erred by denying his pretrial motion to quash. We will affirm the trial court's judgments of conviction.

## BACKGROUND

Gonzales in 2012 was charged with four counts of indecency with a child by contact, four counts of genital-to-genital aggravated sexual assault of a child, and one count of mouth-to-genital aggravated sexual assault of a child. The alleged victim in all of the counts was I.L., and the incidents of abuse were alleged to have occurred during the summer of 2006 when I.L. was living with her grandmother Petra Gonzales while I.L.'s mother was deployed overseas.[1] At that time, Gonzales was married to and living with Petra. While I.L. was living with Petra and Gonzales, the three of them would alternate sleeping in the house on the property and in an RV near the house. The alleged offenses occurred when I.L. was approximately six years old. After Gonzales was charged, a trial was held in 2016.

During the 2016 trial, I.L. testified about the following incidents:

The first time Gonzales touched her, I.L. was lying in between Gonzales and Petra in their bedroom in the house. She felt Gonzales's hand on her genitals on top of her clothing. Gonzales's hand was "just resting there, not doing anything." Gonzales did not say anything.

On another occasion "after that," "[t]he same thing happened," "[e]xcept that [I.L.] was on a different part of the bed." She was lying next to Gonzales, and Petra was lying on the far side of Gonzales. This time, Gonzales's hand was "[o]ver the clothing, once again, but it was moving." His hand was "making a scooping motion."

Another occasion occurred at night when Petra was not "in the room at the time" but was "downstairs, outside." Gonzales pulled down I.L.'s pants and his own pants and tried to put his penis inside her vagina, but he was unable "to get

---

[1] Because Gonzales and Petra Gonzales share the same surname, we will refer to Petra Gonzales by her first name.

inside." Gonzales did not touch her anywhere else that night. Gonzales told her, "This is our secret." This was "the final time" that Gonzales touched her.

On another occasion, I.L. was in the "bedding area" of the RV at night with Gonzales. Petra was on the sofa. I.L. woke up and "felt something weird." Her pants and underwear were pulled down, and Gonzales was licking her genitals. Gonzales did not touch her anywhere else that night or touch her with anything else because Petra woke up. Petra screamed at I.L. and hit her with a sandal. This was "the last time something happened with [I.L.] and [Gonzales]."

Gonzales touched his penis to I.L's genitals three times, licked her genitals once, touched her genitals over her clothing "[f]our to five times," and touched her genitals "skin to skin" "four to five times."

*See Gonzales*, 2017 WL 6756812, at *1-2.

At that trial, Petra also testified regarding an incident in the RV and explained that she woke up at night and "felt" or "heard" something and that "the RV, was, like, shaking . . . you know, like, when somebody is having an affair or something." *Id.* at *2. Next, Petra stated that she walked to the bedroom, turned on the light, saw that I.L.'s underwear had been pulled down, pulled the blanket away from Gonzales, and saw that his boxers were pulled "[n]ot quite down to his knees." *Id.* In her testimony, Petra explained that she could not believe what she had seen but ultimately decided not to call the police to report the incident after Gonzales repeatedly stated that he was sorry.

After the witnesses finished testifying, Gonzales filed a motion for directed verdict as to one of the counts of genital-to-genital aggravated sexual assault, and the trial court granted the motion and submitted the remaining eight counts to the jury. *Id.* After considering the evidence presented at trial, the jury acquitted Gonzales of one count of genital-to-genital aggravated sexual assault and the count of mouth-to-genital aggravated sexual assault but found him guilty of all four counts of indecency with a child and the remaining two counts of

3

genital-to-genital aggravated sexual assault. Gonzales appealed the trial court's judgments of conviction. *Id.*

On appeal, Gonzales argued, among other issues, that his convictions should be reversed because the trial court erred by failing to include in the jury charge an instruction that the jury had to be unanimous as to the criminal conduct underlying each count. *Id.* at *6. In addressing this issue, this Court explained that "the State presented evidence that Gonzales touched I.L.'s genitals with his hand over her clothing '[f]our to five times' and that he touched her genitals 'skin to skin' 'four to five times.' This evidence would support at least eight counts of indecency with a child." *Id.* at *7. Further, this Court highlighted that Gonzales had been charged with four counts of indecency, which were all worded similarly except for the corresponding dates, and that the jury found him guilty of all four counts. *Id.* Similarly, this Court explained that the State "presented evidence that Gonzales touched I.L.'s genitals with his tongue on one occasion and that he touched her genitals with his penis three times. This evidence would support four convictions for aggravated sexual assault." *Id.* However, this Court also observed that the State "charged Gonzales with five counts of aggravated sexual assault" and that "the trial court granted Gonzales's motion for directed verdict as to one count," meaning that the trial "court submitted three counts of genital-to-genital aggravated sexual assault to the jury and one count of mouth-to-genital aggravated sexual assault." *Id.* "The three counts of genital-to-genital aggravated sexual assault were all worded the same in the jury charge except for the dates," *id.*, meaning that the three counts were not linked to any specific event or conduct.

Although this Court recognized that the trial court included a standard unanimity instruction in the jury charge, we reasoned that the instruction was not sufficient "because

4

the jury may have agreed that Gonzales committed conduct satisfying the elements of each count but still have disagreed as to which underlying conduct satisfied each count." *Id.* Regarding the indecency charges, this Court explained that "[i]t is possible that the jury, while unanimously agreeing that Gonzales committed conduct satisfying each of the four indecency counts, disagreed as to which incidents of the eight to ten incidents testified to by I.L. actually occurred." *Id.* Similarly, regarding the aggravated-sexual-assault charges, this Court reasoned that "it is possible that the jury, while unanimously agreeing that Gonzales committed conduct satisfying each of the two counts for aggravated sexual assault for which it found him guilty, disagreed as to which incidents testified to by I.L. actually occurred." *Id.* Accordingly, this Court determined that there was error in the jury charge because it "allowed for a non-unanimous verdict." *Id.* at *8.

When addressing whether the error harmed Gonzales, this Court commented that "[t]he State's most compelling evidence, including a detailed description of the RV incident by I.L. and vivid corroborating testimony from Petra, related to the count of mouth-to-genital aggravated sexual assault—an offense of which the jury found Gonzales not guilty." *Id.* Further, this Court stated that a note written by the jury during the deliberations seeking clarity regarding how to consider the various charges indicated that the jury was confused regarding how to apply unanimity and that "[i]t is likely that this confusion is also reflected in the jury's verdicts, which are difficult to understand." *Id.* at *9. When discussing the unusual nature of the jury's verdicts, this Court further explained as follows:

> For example, the jury found Gonzales not guilty of one count of genital-to-genital aggravated sexual assault but guilty of the other two, even though I.L. described only one instance of such an assault and then stated that this type of assault happened a total of three times. One would expect that the jury would either believe that the two undescribed, undifferentiated assaults both happened or that neither happened. It is also notable that the jury found Gonzales not guilty of the

5

> mouth-to-genital aggravated sexual assault that allegedly occurred during the RV incident, despite the fact that the State's most compelling evidence pertained to that charge, including the detailed corroborating testimony of I.L.'s grandmother.

*Id.* Ultimately, this Court determined that Gonzales was egregiously harmed by the jury-charge error, reversed the trial court's judgments of conviction, and remanded the case for a new trial. *Id.* at \*10-11.

After this Court's ruling, the State charged Gonzales with four additional counts of indecency with a child by contact under a new indictment in a new cause number. Before the new trial, Gonzales filed an application for writ of habeas corpus asserting that double jeopardy and collateral estoppel barred the two aggravated-sexual-assault charges under the old cause number. In addition, Gonzales also filed a motion to quash the new indictment alleging that the State engaged in prosecutorial vindictiveness by adding four additional indecency charges. After a hearing, the trial court denied the motion to quash and the relevant portions of the habeas application. Following the trial court's rulings, the State moved to consolidate the new case with the case on remand along with their respective charges, and the trial court granted the motion. Accordingly, after the consolidation, trial proceeded on eight counts of indecency with a child by contact (Counts I to VIII) and two counts of aggravated sexual assault of a child (Counts IX and X).

During the 2019 trial, the State called several witnesses, including I.L. I.L. testified to the following incidents:

> When she was in the RV during the day lying down, Gonzales began touching her vaginal area with his hand and "moving in a circular motion" over her clothing while he was kneeling at the front of the bed. She asked Gonzales what he was doing, but he did not answer her. She started to cry, and he continued to move his hand for several minutes before leaving the room.

6

One night in the RV, Gonzales pulled her pajamas and underwear down before placing his finger on her vaginal area and moving his finger in a circular motion and telling her that "it was our secret" when she asked what he was doing. Gonzales stopped when she started crying and told him that he was hurting her, and he went away and did not touch her anymore that night.

On a rainy day, Gonzales pulled her pants and underwear down while she was in the RV, inserted his finger into her vagina "past the labia," stopped when she started crying, and did not say anything to her during the incident.

While she was asleep on the pull-out couch in the RV and wearing a wet towel to keep from "overheating," Gonzales removed her underwear and pajamas, removed his pants and underwear, got on top of her, rubbed his penis on her vagina, did not put his hands near her genitals on that occasion, and told her not to tell anyone about the incident because "it's a secret." When discussing the incident, she explained that Gonzales's penis and stomach contacted her body, that he touched her waist with his hands, and that Petra was in the bed at the back of the RV.

While she was on a bed in the RV at night, Gonzales "violently ripped off [her] pants and [her] underwear," removed his clothes, spread her legs, placed his penis on her vagina, moved it past her labia, and tried but was unable to fully insert his penis into her vagina. She started screaming and told him to stop, and Petra heard the commotion, saw what was happening, started yelling at her "for seducing him," and hit her. This was the last incident that occurred.

In addition to providing details regarding the specific instances listed above, I.L. also generally testified that she could not give an exact number for how many times Gonzales touched her vagina with his hands because "[t]here were too many times" but explained that it happened regularly. Further, I.L. explained that during the time that she lived with Gonzales and Petra, Gonzales caused his penis to contact her vagina "more than ten times" and caused his hands to contact her vagina "[m]ore than ten times." Additionally, although I.L. agreed that she testified regarding more events than she did during the 2016 trial, she explained that she remembered more events after reviewing her interview at the child advocacy center.

After considering the evidence presented at trial, the jury convicted Gonzales of all eight indecency charges and both aggravated-sexual-assault charges. Gonzales appeals the

7

trial court's judgments of conviction pertaining to four of the indecency charges and to both aggravated-sexual-assault charges.

## DISCUSSION

In his first issue on appeal, Gonzales contends that the 2019 counts of aggravated sexual assault (Counts IX and X) were barred by double jeopardy and by collateral estoppel. In his second issue on appeal, Gonzales asserts that the trial court erred by denying his motion to quash the indictment alleging the State engaged in prosecutorial vindictiveness by adding before the 2019 trial four indecency charges after his convictions were overturned on appeal.

### Double Jeopardy

In one set of arguments in his first issue, Gonzales contends that double jeopardy barred Count IX. When presenting this issue, Gonzales highlights that the jury in the 2016 trial found him not guilty of one count of genital-to-genital aggravated sexual assault, argues that the acquittal barred the State from retrying that count in the 2019 trial, and contends that the offense for which he was convicted in 2016 is the same as Count IX. As support, Gonzales notes that the portion of the indictment from the 2016 case setting out the aggravated-sexual-assault charge tracks the allegations for Count IX from the 2019 case except for the date of the alleged offenses (e.g., both alleged that Gonzales "intentionally or knowingly cause[d] the female sexual organ of [I.L.] . . . to contact the male sexual organ of" Gonzales). The 2019 jury charge specified that Count IX referred to the events that occurred on the pull-out couch in the RV.

Moreover, Gonzales contends that during the 2016 trial, I.L. testified specifically only about one incident in which his penis allegedly contacted her vagina after removing her pants and in which he tried unsuccessfully to penetrate her vagina. Gonzales also highlights that

8

I.L. testified during the 2016 trial that he allegedly told her that "[t]his is our secret" during that incident. After referring to testimony from the 2016 trial, Gonzales notes that during the 2019 trial, I.L. testified about an incident in which he allegedly removed her underwear and pajama bottoms, rubbed his penis on her vagina, did not penetrate her vagina, and told her that she could not tell anyone about the incident because it was a secret. Gonzales contends that I.L.'s descriptions at the 2016 and 2019 trials were similar, particularly the portions where Gonzales allegedly stated that the incidents were secrets, and urges that she must have been describing the same event.

In addition, Gonzales refers to portions of our previous opinion discussing jury unanimity and notes that this Court explained that it was "possible that some jurors believed the occurrence of genital-to-genital contact that I.L. specifically described and believed that the contact happened only one additional time while other jurors believed that the described occurrence did not happen but believed that the other two instances of genital-to-genital contact did happen." *Gonzales*, 2017 WL 6756812, at *7 n.6. However, Gonzales urges that because I.L. only specifically described one incident of genital-to-genital contact, that must be the conduct that the jury disbelieved and for which it acquitted him. Accordingly, Gonzales argues that the "retrial of the same instance of aggravated sexual assault that [he] was acquitted of in 2016 violated the prohibition against double jeopardy."[2]

---

[2] In its reply brief, the State asserts that Gonzales failed to preserve his first issue for appellate consideration by failing to object when the State requested that the jury charge include language linking the two aggravated sexual assaults to "the two specific incidents" of aggravated sexual assault I.L. testified about. As support for this proposition, the State refers to *Storey v. State* in which one of our sister courts of appeals found that the defendant did not preserve his double-jeopardy complaint because he "did not raise a double jeopardy objection to the trial court during his request for an election." Nos. 05-18-00454—00455-CR, 2019 WL 1486892, at *4 (Tex. App.—Dallas Apr. 4, 2019, no pet.) (mem. op., not designated for publication). Although

A defendant may not be placed in jeopardy twice for the same offense. *See* U.S. Const. amend. V; Tex. Const. art. I, § 14; *see also Ex parte Mitchell*, 977 S.W.2d 575, 580 (Tex. Crim. App. 1997) (explaining that double-jeopardy provisions from United States Constitution and Texas Constitution "provide substantially identical protections"). The "Double Jeopardy Clause protects criminal defendants from three things: 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense." *Ex parte Milner*, 394 S.W.3d 502, 506 (Tex. Crim. App. 2013); *see* U.S. Const. amend. V; Tex. Const. art. I, § 14; *Ex parte Castillo*, 469 S.W.3d 165, 168 (Tex. Crim. App. 2015).

The "threshold question" in evaluating a double-jeopardy claim is whether the defendant is being punished for the "same offense." *State v. Perez*, 947 S.W.2d 268, 270 (Tex. Crim. App. 1997). "For Double Jeopardy purposes, '[t]he same offense means the identical criminal act, not the same offense by name.'" *Ex parte Goodbread*, 967 S.W.2d 859, 860 (Tex.

our sister court did conclude that the defendant failed to preserve his issue for appellate consideration, the court also explained that to preserve a double-jeopardy complaint, a defendant need only raise the issue in some manner "before the time the trial court submits its charge to the jury." *Id.* Unlike in *Storey*, in this case, Gonzales filed an application for writ of habeas corpus prior to trial arguing that the two aggravated-sexual-assault counts were barred by double jeopardy and collateral estoppel, and the trial court denied the writ application as to those counts after convening a hearing.

If Gonzales's actions were insufficient to preserve his first issue for appellate consideration, we would need to address whether he could bring his claim for the first time on appeal because a defendant may present a double-jeopardy claim for the first time on appeal "when (1) the undisputed facts show that the double jeopardy violation is clearly apparent on the face of the record, and (2) enforcement of the usual rules of procedural default serves no legitimate state interests." *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014). Accordingly, to ascertain whether Gonzales could present his claim for the first time, we would evaluate whether the face of the trial record clearly shows a double-jeopardy violation. *See id.*; *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006). For the reasons set out in the body of the opinion, we would conclude that the face of the record does not clearly show a double-jeopardy violation and, accordingly, overrule the issue.

Crim. App. 1998) (quoting *Luna v. State*, 493 S.W.2d 854, 855 (Tex. Crim. App. 1973)). "In a successive prosecution double jeopardy challenge, the defendant has the burden of proving former jeopardy by a preponderance of the evidence, which includes the burden of showing that the offense for which he is threatened with prosecution is the same offense as the one for which he has already been convicted." *State v. Donaldson*, 557 S.W.3d 33, 49 (Tex. App.—Austin 2017, no pet.) (collecting cases).

The Court of Criminal Appeals has explained that there are two relevant inquiries in a double-jeopardy analysis when considering whether the offenses at issue are "the same": legal sameness and factual sameness. *Ex parte Castillo*, 469 S.W.3d at 172; *see Aekins v. State*, 447 S.W.3d 270, 283 (Tex. Crim. App. 2014) (Keller, P.J., concurring) (stating that offenses are same when they are same in law and in fact). The defendant is required to prove both components "[t]o prevail" on a double-jeopardy claim. *Ex parte Castillo*, 469 S.W.3d at 169. "The legal-sameness inquiry depends on only the pleadings and statutory law—not the record—to ascertain whether two offenses are the same." *Id.* at 172. "The factual-sameness inquiry requires a reviewing court to examine the entire record to determine if the same offenses have been alleged." *Id.* When, like here, there is only one statute at issue, the reviewing court must conduct "a 'units' analysis" to determine whether the offenses are the same. *Ex parte Benson*, 459 S.W.3d 67, 71 (Tex. Crim. App. 2015). Factual-sameness determinations are based on the "allowable unit of prosecution," and appellate courts must review the record "to establish how many units have been shown." *Ex parte Castillo*, 469 S.W.3d at 169. This type of analysis involves consideration of factors like whether a victim "who was assaulted" was assaulted again later at another time "or whether multiple kinds of sex acts were committed against a victim." *Ex parte Benson*, 459 S.W.3d at 73; *see also Aekins*, 447 S.W.3d at 278 (explaining that "[a]

11

person who commits more than one sexual act against the same person may be convicted and punished for each separate and discrete act, even if those acts were committed in close temporal proximity"). In determining how many units have been shown, reviewing courts must examine "the trial record, which can include the evidence presented at trial." *Ex parte Benson*, 459 S.W.3d at 74. Offenses "are factually the same for successive prosecution purposes" only if the reviewing court determines "that the offenses are based on the same unit of prosecution." *Ex parte Castillo*, 469 S.W.3d at 169.

As an initial matter, we note that, based on this record, it is not entirely clear how Gonzales could satisfy his burden of showing that the offense for which he was acquitted in 2016 is factually the same as Count IX from the 2019 trial. At the end of the 2016 trial, the jury acquitted Gonzales of one of the three nearly identically worded genital-to-genital charges. Although Gonzales contends that the only logical conclusion from the jury's inconsistent verdicts is that the jury acquitted him of the incident for which I.L. provided the most detail, this Court recognized that it is not clear from the record of which alleged misconduct the jury acquitted him because the jury could have disagreed about which incidents described in I.L.'s testimony actually occurred. *Gonzales*, 2017 WL 6756812, at \*7.

Even assuming that the record could establish that Gonzales was acquitted of the assault for which I.L. provided the most detail, the testimony by I.L. during the 2016 and 2019 trials does not support a determination that the aggravated sexual assault for which Gonzales was acquitted in 2016 is factually the same as Count IX for which he was subsequently convicted in 2019. As set out above, during the 2016 trial, I.L. provided details regarding one incident of genital-to-genital aggravated sexual assault by stating that Gonzales pulled his and her pants off at night while Petra was "downstairs, outside"; tried to but was unable to insert his penis into

12

her vagina; and told her that the activity was their "secret." Before discussing this incident, I.L. testified regarding various acts that occurred in the bedroom of Gonzales's house. When I.L. testified about the incident in which Gonzales attempted to insert his penis, she explained that during this incident Petra was not "in the room" where those prior acts occurred. Further, I.L. clarified that Gonzales did not touch any other parts of her body that night.

In contrast, when discussing the incident corresponding to Count IX at the 2019 trial, I.L. testified that the incident occurred on a pull-out bed in the RV rather than in the house. In addition, I.L. did not mention any attempt by Gonzales to penetrate her vagina and instead stated that he rubbed his penis on her vagina. Moreover, I.L. testified that Petra was in the bed at the back of the RV during this incident rather than "downstairs, outside," as described during the 2016 trial. Unlike her testimony during the 2016 trial, I.L. also testified that Gonzales touched her waist during the incident in the RV, that his stomach touched her body, and that she had a wet towel on her head to keep herself cool. Although I.L. testified during the 2016 trial that Gonzales stated that the incident at issue was a "secret" and similarly testified during the 2019 trial that he said that the incident in the RV was a "secret," I.L. also testified during the 2019 trial that he made similar statements during another incident of abuse.

Considering the significant differences between I.L.'s testimony in 2016 specifically describing an incident of aggravated sexual assault and her testimony in 2019 describing an offense corresponding to Count IX and in light of I.L.'s testimony indicating that Gonzales described his actions as secrets during more than one encounter, we must conclude that Gonzales has failed to meet his burden of establishing that the offenses in question are based on the same unit of prosecution and, therefore, failed to establish that the two offenses in question are factually the same. *Cf. Rodriguez v. State*, 446 S.W.3d 520, 533 (Tex. App.—San Antonio

13

2014, no pet.) (observing that "[i]t has long been the law in Texas that '[v]arious acts of sexual abuse committed over a period of time do not comprise a single offense; rather, a person who commits'" several discrete assaults against same person "'is liable for separate prosecution and punishment for each separate act of abuse'" (quoting *De Los Santos v. State*, 219 S.W.3d 71, 77 (Tex. App.—San Antonio 2006, no pet.))).

For these reasons, we overrule the first part of Gonzales's first issue on appeal.

**Collateral Estoppel**

In his second set of arguments in his first issue, Gonzales contends that the doctrine of collateral estoppel barred the other count of genital-to-genital aggravated sexual assault alleged in the 2019 trial (Count X). As support for that proposition, Gonzales notes that during the 2016 trial, the jury acquitted him of the mouth-to-genital aggravated sexual assault and highlights parts of I.L.'s testimony from the 2016 trial pertaining to that offense. For example, Gonzales refers to portions of I.L.'s testimony in which she explained that the last incident occurred inside the RV on the bed at night, that Petra was on the sofa when the abuse started, that she woke up after feeling "something weird," that he was "licking" her "vagina," that he had pulled her pajamas and underwear down, and that he did not touch her anywhere else that night because "Petra woke up before he could" and discovered what was going on. Additionally, Gonzales observes that Petra corroborated parts of that account during the 2016 trial and that this Court described the evidence regarding this incident as the "most compelling evidence" presented but acknowledged that the jury found him not guilty anyway.

Next, Gonzales points to portions of I.L.'s testimony during the 2019 trial in which she explained that the last incident of abuse occurred in the RV at night while she was on

14

the bed, that he walked to the bed, that she was trying to sleep, that he violently took off her pants and underwear, that he spread her legs, that his penis made contact with her vagina and went "past [her] labia," that he tried but was unable to insert his penis into her vagina, and that Petra heard something and came into the room and saw them.

After referencing the testimony from the two trials, Gonzales argues that the testimony from I.L. during both trials was describing the last act of abuse and urges that I.L. explained during the 2016 trial "that oral sex was the only thing that occurred the time that her grandmother witnessed and interrupted [the] inappropriate behavior." Moreover, Gonzales contends that it would have been irrational for the jury to have acquitted him of the mouth-to-genital charge "without also finding that the testimony of I.L. and I.L.'s grandmother, a fact central to the allegation, was false." Accordingly, Gonzales insists that because the jury acquitted him of the mouth-to-genital charge in the 2016 trial, "the State should have been prevented from re-litigating the questions of fact regarding that particular instance of conduct in the" 2019 trial.

As support for this proposition, Gonzales cites *Ashe v. Swenson*, 397 U.S. 436 (1970). In that case, the Supreme Court explained that collateral estoppel is a component of "the Fifth Amendment guarantee against double jeopardy" and "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443, 445. The doctrine is applied "with realism and rationality," meaning that if a previous judgment of acquittal is based on a general verdict, a court must "'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" *Id.* at 444 (quoting Mayers & Yarbrough, *Bis Vexari: New Trials*

15

*and Successive Prosecutions*, 74 Harv. L. Rev. 1, 38-39 (1960)).  Although the Supreme Court explained in *Ashe* that collateral estoppel is a component of the double-jeopardy protections, *id.* at 445; *see also Dowling v. United States*, 493 U.S. 342, 347 (1990) (explaining that *Ashe* "recognized that the Double Jeopardy Clause incorporates the doctrine of collateral estoppel"), it has also explained that "[t]he absence of appellate review of acquittals . . . calls for guarded application of preclusion doctrine in criminal cases" because the doctrine is based on confidence that the result achieved was substantially correct, *Bravo-Fernandez v. United States*, 137 S. Ct. 352, 358 (2016).

Consistent with this guarded approach, the Court has emphasized that the test under *Ashe* "is a demanding one" and "forbids a second trial only if to secure a conviction the prosecution must prevail on an issue the jury necessarily resolved in the defendant's favor in the first trial." *Currier v. Virginia*, 138 S. Ct. 2144, 2150 (2018).  In other words, for a second trial to be barred, a court "must be able to say that 'it would have been *irrational* for the jury' in the first trial to acquit without finding in the defendant's favor on a fact essential to a conviction in the second." *Id.* (quoting *Yeager v. United States*, 557 U.S. 110, 127 (2009) (Kennedy, J., concurring)).  Moreover, the Court has also instructed that "[t]he burden is 'on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding.'" *Schiro v. Farley*, 510 U.S. 222, 233 (1994) (quoting *Dowling*, 493 U.S. at 351).  Collateral estoppel is rarely available to a defendant because it is usually not possible to determine on what basis a jury reached a verdict in a criminal case.  *United States v. Citron*, 853 F.2d 1055, 1058 (2nd Cir. 1988).[3]

---

[3] We note that recent case law has questioned whether the doctrine of collateral estoppel falls within the protections afforded by the Double Jeopardy Clause.  *See Currier v. Virginia*,

In *Ashe*, the defendant was alleged to have robbed a victim who was playing a poker game with five other men and had previously been acquitted during a trial addressing the robbery of one of the other victims, and the Supreme Court addressed whether collateral estoppel applied to the subsequent trial. 397 U.S. at 437. Ultimately, the Supreme Court determined that the doctrine applied and prohibited the later trial because the record from the first trial was "devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred" or that the named victim had not been a victim of that robbery and because "[t]he single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers," which the jury determined he was not by its verdict. *Id.* at 445.

In contrast here, a determination that Gonzales did not commit the mouth-to-genital offense alleged did not compel a conclusion that he could not have committed another type of aggravated sexual assault during that incident. *See* Tex. Penal Code § 22.021(a) (listing different types of conduct constituting aggravated sexual assault); *see also Vick v. State*, 991 S.W.2d 830, 831, 834 (Tex. Crim. App. 1999) (explaining that "one transaction of aggravated sexual assault can result in the commission of separate statutory offenses" and concluding that acquittal of charge alleging that defendant penetrated victim's vagina with his penis did not bar subsequent prosecution "based upon the same transaction" in which charge alleged, among other things, that defendant caused child's sexual organ to contact his mouth).

138 S. Ct. 2144, 2152-55 (2018) (plurality op.) (noting that issue preclusion applies in civil cases, that Double Jeopardy Clause does not speak "about prohibiting the relitigation of issues or evidence but offenses," that Double Jeopardy Clause does not apply to evidentiary facts, that issue preclusion has not been applied in circumstances where party against whom preclusion is sought could not obtain review of judgment in initial action, and that government cannot obtain review of acquittals); *see also State v. Waters*, 560 S.W.3d 651, 663 (Tex. Crim. App. 2018) (Newell, J., concurring) (noting that recent case law by Supreme Court undermines previous determination "that the civil doctrine of collateral estoppel is truly embedded within the text or history of the Fifth Amendment").

Additionally, given that the jury in 2016 did determine that Gonzales committed multiple sexual offenses against I.L., including two aggravated sexual assaults, we cannot say that it would have been irrational for the jury in 2016 to have acquitted Gonzales of mouth-to-genital aggravated sexual assault without also finding in his favor a fact essential to a conviction for Count IX involving genital-to-genital aggravated sexual assault. At the "first trial, the State failed to prove that" Gonzales penetrated I.L.'s sexual organ with his mouth or tongue or caused her sexual organ to contact his mouth, and "[t]he State is not seeking to relitigate" those allegations. *See Ex parte Chafin*, 180 S.W.3d 257, 258-60 (Tex. App.—Austin 2005, no pet.) (determining that collateral estoppel was not implicated in case in which convictions for indecency by contact alleging that defendant touched victim's breasts were reversed on sufficiency grounds and in which defendant was reindicted for one count of indecency by exposure).

In addition, the unusual nature of the jury's verdicts in the 2016 trial supports a conclusion that collateral estoppel is not implicated in this case. *See Gonzales*, 2017 WL 6756812, at *9. As discussed earlier, the State's strongest and most compelling evidence pertained to the mouth-to-genital aggravated sexual assault, but the jury acquitted Gonzales of that offense and convicted him of the four indecency charges and the two other aggravated-sexual-assault charges. When discussing these inconsistent verdicts, this Court explained that there was an erroneous unanimity instruction and discussed how the questions submitted by the jury demonstrated that the jury was having difficulty deciding how to apply the unanimity instruction, which likely resulted in the inconsistent verdicts. *See id.*

The Supreme Court has explained that collateral estoppel or issue preclusion "does not apply when verdict inconsistency renders unanswerable 'what the jury necessarily decided.'" *Bravo-Fernandez*, 137 S. Ct. at 357 (quoting *United States v. Bravo-Fernandez*,

18

790 F.3d 41, 47 (1st Cir. 2015)); *see also id.* at 358, 359 (explaining that "a defendant cannot meet this burden when the same jury returns irreconcilably inconsistent verdicts on the question she seeks to shield from reconsideration" and that "the Government's inability to gain review 'strongly militates against giving an acquittal [issue] preclusive effect'" "where it appears that a jury's verdict is the result of compromise, compassion, lenity, or misunderstanding of the governing law" (quoting *Standefer v. United States*, 447 U.S. 10, 23 (1980))); *Standefer*, 447 U.S. at 23 n.17 (observing that inconsistency in verdicts was "reason, in itself, for not giving preclusive effect to the acquittals"); *Citron*, 853 F.2d at 1058 (reasoning that inconsistent verdicts "whether based on error, confusion, or a desire to compromise, give little guidance as to the jury's factual findings" and that in those circumstances principles of collateral estoppel are not helpful).

Accordingly, we conclude that Gonzales has failed to meet his burden of showing that his conviction in the 2019 trial under Count X for genital-to-genital aggravated sexual assault was barred by collateral estoppel due to his acquittal of mouth-to-genital aggravated sexual assault during the 2016 trial. *See Ex parte Infante*, 151 S.W.3d 255, 259, 260 (Tex. App.—Texarkana 2004, no pet.) (determining that collateral estoppel under *Ashe* did not preclude prosecution of remaining charges after defendant was acquitted of aggravated sexual assault in one case even if they "all arose from the same occurrence" because "identity was not shown to be the determinative issue on the acquittal" and because "the jury's verdict [might have] turned on an issue other than identity"); *see also Bravo-Fernandez*, 137 S. Ct. at 362-63 (reasoning that "the issue-preclusion component of the Double Jeopardy Clause" does not bar government "from retrying defendants . . . after a jury has returned irreconcilably inconsistent

19

verdicts of conviction and acquittal, and the convictions are later vacated for legal error unrelated to the inconsistency").

For these reasons, we overrule the second part of Gonzales's first issue on appeal.

**Additional Indecency Charges**

In his second issue on appeal, Gonzales argues that the trial court erred by failing to grant his motion to quash the indictment containing the four new indecency charges before the 2019 trial on the ground that the State engaged in prosecutorial vindictiveness by charging him with new offenses after he successfully appealed his convictions. Although Gonzales acknowledges that the State asserted that it pursued the new charges after learning about additional acts of abuse through I.L.'s testimony at the 2016 trial, he urges that the evidence does not support that explanation. In particular, Gonzales argues that I.L.'s testimony at the 2016 trial was ambiguous regarding how many acts of indecency occurred and did not support the inclusion of four additional charges. Further, Gonzales asserts that the information purportedly gleaned during the 2016 trial was not entirely new to the State because the State acknowledged during the 2019 pretrial hearing on his motion to quash that I.L. stated during a forensic interview that there were four to five acts of indecent contact. Accordingly, Gonzales argues that the State could have initially charged him with five counts of indecency with a child before the 2016 trial but chose not to do so. Next, Gonzales highlights that there was no evidence presented at the pretrial hearing showing that "I.L. did not divulge the information" about the additional acts "to prosecutors when prosecutors were preparing I.L. to testify before the first trial occurred." Additionally, Gonzales notes that the State referenced this Court's prior opinion during the pretrial hearing when explaining why it chose to pursue the additional charges and,

20

therefore, insists that the State's actions were "inextricably bound to . . . Gonzales exercising his appellate rights." Accordingly, Gonzales insists that the filing of the additional charges was an impermissible response to his decision to appeal his prior convictions and that the trial court should have dismissed those new charges due to the State's prosecutorial vindictiveness.

Generally speaking, prosecutors have broad discretion in deciding what cases to prosecute, meaning that if the prosecutor has probable cause to believe that the defendant committed an offense, the prosecutor has the discretion to decide whether to prosecute and what charge to file. *Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004). Moreover, "[c]ourts must presume that a criminal prosecution is undertaken in good faith and in nondiscriminatory fashion to fulfill the State's duty to bring violators to justice." *Id.* However, "a decision to prosecute violates due process when criminal charges are brought in retaliation for the defendant's exercise of his legal rights." *Id.* "[A] prosecutor may not increase the charges against a defendant simply as a punishment for invoking a right, such as pursuing an appeal." *Ex parte Legrand*, 291 S.W.3d 31, 41 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd); *see also United States v. Goodwin*, 457 U.S. 368, 372 (1982) (observing that punishing "a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort'" (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978))). "One who has been convicted of an offense must be entitled to pursue his appellate rights without fear that the government will retaliate by substituting a more serious charge for the initial one." *Ex parte Legrand*, 291 S.W.3d at 41.

Cases addressing prosecutorial vindictiveness typically state that the presumption applies when the State alleges a more serious charge or imposes new enhancement allegations. *See Blackledge v. Perry*, 417 U.S. 21, 28-29 (1974); *Neal*, 150 S.W.3d at 174. However, courts

21

have indicated that the prospect of prosecutorial vindictiveness can also arise when separate charges are added prior to a second trial after the defendant obtains relief from his prior conviction. *See Hardwich v. Doolittle*, 558 F.2d 292, 302-03 (5th Cir. 1977) (concluding "that the facts made out a prima facie case for the petitioner," "that the cause should be remanded to the district court to afford the prosecutor the opportunity to come forward with countervailing evidence," and that trial court had discretion to decide "whether a hearing will be necessary to show why the two new charges were added to the indictment against [the defendant] after he had exercised his rights").

Under specific and limited circumstances, "the presumption that a prosecution is undertaken in good faith gives way to either a rebuttable presumption of prosecutorial vindictiveness or proof of actual vindictiveness." *Neal*, 150 S.W.3d at 173. "A constitutional claim of prosecutorial vindictiveness may be established" by one of two distinct ways: "1) proof of circumstances that pose a 'realistic likelihood' of such misconduct sufficient to raise a 'presumption of prosecutorial vindictiveness'" that the State must rebut to avoid the charges being dismissed, or "2) proof of 'actual vindictiveness'—that is, direct evidence that the prosecutor's charging decision is an unjustifiable penalty resulting solely from the defendant's exercise of a protected legal right." *Id.* (quoting *Goodwin*, 457 U.S. at 380-81; *United States v. Johnson*, 171 F.3d 139, 140-41 (2d Cir. 1999)).

In this case, Gonzales argues that the requirements for the first prong were satisfied and does not assert that there was proof of actual vindictiveness. The presumption of prosecutorial vindictiveness applies when the defendant proves that he was convicted, appealed, and obtained a new trial "and that the State thereafter filed a greater charge or additional enhancements." *Rymes v. State*, 536 S.W.3d 85, 99 (Tex. App.—Texarkana 2017, pet. ref'd)

(quoting *Neal*, 150 S.W.3d at 174). When the presumption applies, "it can be overcome by objective evidence in the record justifying the prosecutor's action." *Neal*, 150 S.W.3d at 174. In other words, if the presumption applies, the burden shifts to the State "to come forward with an explanation for the charging increase that is unrelated to the defendant's exercise of his legal right to appeal." *Id.*; *see Ex parte Legrand*, 291 S.W.3d at 42. When deciding the issue, the trial court considers "the evidence, pro and con, and the credibility of the prosecutor's explanation." *Neal*, 150 S.W.3d at 174; *see Ex parte Legrand*, 291 S.W.3d at 42. "The relevant question is whether there is a realistic likelihood that the prosecutor acted out of a vindictive motive rather than a legitimate one." *Zuliani v. State*, No. 03-00-00538-CR, 2001 WL 725692, at *4 (Tex. App.—Austin June 29, 2001, pet. ref'd) (op., not designated for publication).

Appellate courts review a trial court's ruling on a prosecutorial-vindictiveness claim for an abuse of discretion. *See Hood v. State*, No. 07-02-00524-CR, 2004 WL 573827, at *6 (Tex. App.—Amarillo Mar. 23, 2004) (op., not designated for publication), *aff'd*, 185 S.W.3d 445 (Tex. Crim. App. 2006); *see United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir. 2006). Under that standard, the record is "viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)).

Even if the presumption applies to the circumstances present here, we would still be unable to sustain Gonzales's second issue. At the hearing on the motion, the State explained that it sought the additional charges because it did not know about those additional acts until I.L. testified about them at the 2016 trial. *Cf. United States v. Dvorin*, 817 F.3d 438, 455 (5th Cir. 2016) (noting that presumption can be rebutted if government proves that events occurring

since original indictment altered initial exercise of prosecutor's discretion); *Ex parte Legrand*, 291 S.W.3d at 43 (determining that trial court "was entitled to believe the prosecutor's explanation that the increased charges against appellant were not intended to punish her for securing a new trial but, rather, to address a perceived evidentiary problem in the upcoming second trial").[4] Further, the State referenced I.L.'s forensic interview and asserted that it was unclear from her interview "how many incidents of indecency occurred" and that the interviewer did not ask very many clarifying questions. *Cf. Hood*, 185 S.W.3d at 450 (deciding "that a 'mistake or oversight' explanation is an 'objective explanation' that may be sufficient to rebut a presumption of prosecutorial vindictiveness especially when as here, a prosecutor does not merely deny his state of mind was motivated by vindictiveness").

Moreover, the trial court admitted into evidence during the pretrial hearing a recording of I.L.'s forensic interview and a letter that the State wrote to Gonzales after his appeal discussing why the additional charges were added. On the recording, I.L. stated, among other things, that Gonzales touched her "area" over and under her clothes, that she thought he touched her area four to five times, and that she was not sure how many times it happened. In the letter, the State mentioned, among other things, that I.L. indicated in her interview that "there were 4-5 incidents of indecency" but that the testimony at trial established "that there were 4-5 incidents over the clothes" and "4-5 incidents under the clothing (skin-to-skin)." *See Gonzales*, 2017 WL 6756812, at *2 (explaining that I.L. testified that Gonzales touched her genitals over

---

[4] In his brief, Gonzales contends that this Court should not rely on *Ex parte Legrand* in our analysis of prosecutorial vindictiveness because that case, unlike the current one, involved a circumstance in which the trial court limited the State's ability to introduce evidence of other crimes committed by the defendant to rebut her defensive theory. 291 S.W.3d 31, 42 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). However, we do not believe that this distinction renders the larger analysis on prosecutorial vindictiveness in *Legrand* inapplicable here.

24

her clothing "[f]our to five times" and touched her genitals "skin to skin" "four to five times"). With the preceding in mind, the State explained in its letter that it filed the additional charges based on the new information from trial. *Cf. State v. Moran*, 820 A.2d 381, 382, 389 (Del. Sup. Ct. 2002) (overruling prosecutorial-vindictiveness claim asserting that additional claims in new indictment following mistrial were motivated by prosecutorial vindictiveness where prosecutor rebutted presumption by showing that "it did not know" about additional offenses because victim did not disclose them).

Although the State did mention this Court's decision during the pretrial hearing, the State did not indicate that it filed the additional charges because Gonzales exercised his right to appeal. *See Ex parte Legrand*, 291 S.W.3d at 41. On the contrary, the State explained that it did not allege the additional charges to punish Gonzales for successfully appealing his convictions and that it included the additional charges based on the evidence that was presented at the trial. *Cf. Barner*, 441 F.3d at 1319 (observing that government's decision to later "charge the conduct in a way that could support a conviction does not show a desire to punish [the defendant] for exercising his rights, but rather to punish him for the alleged felonious conduct").

After considering the parties' arguments and the evidence presented during the hearing, "the trial court was entitled to believe" the State's explanation regarding why the additional charges were filed and to conclude that the objective explanation was unrelated to Gonzales's decision to exercise his right to appeal and was, "therefore, sufficient to rebut a presumption of vindictiveness." *See Hood*, 185 S.W.3d at 448. Accordingly, we conclude that the trial court did not abuse its discretion by denying Gonzales's motion to quash the indictment containing the four additional indecency charges.

For these reasons, we overrule Gonzales's second issue on appeal.

25

## CONCLUSION

Having overruled Gonzales's two issues on appeal, we affirm the trial court's judgments of conviction.

_____

Thomas J. Baker, Justice

Before Chief Justice Byrne, Justices Baker and Triana

Affirmed

Filed:   April 20, 2021

Do Not Publish